Boyd **CAMPBELL** and Beverly Campbell, Plaintiffs and Appellants,

v.

Janet C. **CAMPBELL**, Defendant and Appellee.

No. 930790–CA.

Court of Appeals of Utah.

May 18, 1995.

---

L. Brent Hoggan (argued), Olson & Hoggan, P.C., Logan, for appellants.

Dianne R. Balmain (argued), Hult & Balmain, Logan, for appellee.

Before ORME, GARFF[1] and WILKINS, JJ.

ORME, Presiding Judge:

Boyd and Beverly Campbell appeal the trial court's order awarding them only limited rights of visitation with their grandchildren. Upholding the constitutionality of Utah's grandparent visitation statute, we vacate the order and remand.

## FACTS

Appellants Boyd and Beverly Campbell were the parents of Kelly Campbell. Kelly Campbell was the husband of appellee Janet Campbell until his death on August 1, 1991. At the time of Kelly's death, Kelly and Janet had four children, and Janet was pregnant with a fifth child.

After Kelly's death, Boyd and Beverly sought to maintain a relationship with their five grandchildren. Janet claims she encour-

---

**1.** Senior Judge Regnal W. Garff, acting pursuant to appointment under Rule 3–108(4), Utah Code of Judicial Administration.

aged her children's relationships with their grandparents, but was unable to accommodate the increasing demands of Boyd and Beverly as these demands unreasonably interfered with her children's schedules. In contrast, Boyd and Beverly claim that the restrictions Janet placed on their reasonable requests for visitation became increasingly onerous, necessitating their filing a legal action to obtain formal visitation rights.

On February 11, 1993, Boyd and Beverly filed a complaint asking the court to award them "reasonable rights" of visitation and specifically requested the following visitation schedule:

A. The second and fourth weekends of each month from 8:00 p.m., Friday, to 6:00 p.m., Sunday.

B. Some time during the school holidays such as Thanksgiving, Christmas, spring vacation and Memorial Day.

C. Some time with each child either the day before or the day after his or her birthday.

D. Three (3) weeks of summer vacation.

With the complaint, Boyd and Beverly filed a motion for an order to show cause. The court issued an order requiring Janet to show cause why Boyd and Beverly should not be granted reasonable visitation rights with their grandchildren. On March 18, 1993, a hearing was held before a commissioner. At the conclusion of the hearing, the commissioner entered a temporary order granting Boyd and Beverly reasonable rights of visitation and defined reasonable visitation as "every other Saturday at 9:00 a.m. until Sunday in time for the grandchildren to attend church." Under the terms of the temporary order, reasonable visitation also included the right "to visit with the grandchildren on the telephone at reasonable times and under reasonable circumstances." In addition, each grandchild was exempted from visitation if it interfered with "a scheduled school, church, or medical appointment."

On March 30, 1993, Janet filed an objection to the commissioner's temporary order. On May 18, 1993, the trial court held a hearing on Janet's objection. At this hearing the parties agreed, by stipulation, to allow Boyd and Beverly to visit the three oldest grandchildren for one day every other week. This visitation schedule remained in place until September 17, 1993, at which time the trial court held a hearing to review and resolve all outstanding issues in the case.

Because counsel for both sides believed that presentation of evidence through testimony would further exacerbate the already acrimonious relationship between the parties, and in an effort to preserve the possibility of future reconciliation between them, counsel proffered their evidence and argued their clients' positions to the court. At this hearing, Boyd and Beverly requested more extensive visitation rights.[2]

2. Specifically, Boyd and Beverly requested the following visitation schedule:

1. One (1) twenty-seven (27) hour period every other week, preferably from 6:00 p.m. Friday night to 9:00 p.m. on Saturday night. If the children have church, school or recreational activities or music lessons during this time, Campbells will see that the children involved attend all such activities.

2. One (1) evening on the day before or after each child's birthday from 4:00 p.m. to 8:30 p.m. during the school year and until 9:00 p.m. when school is not in session.

3. Father's Day from 9:00 a.m. until 6:00 p.m.

4. Three (3) days during the Christmas holidays.

5. One (1) day during the Thanksgiving holiday from 9:00 a.m. until 9:00 p.m.

6. One (1) week during the summer.

7. The time and duration of Campbells' family reunions.

8. Once per month from 4:00 p.m. until 8:00 p.m. with one child of Campbells' choice for purposes of a one-on-one relationship with that child.

In addition to the foregoing, Campbells would like the older children to work at odd jobs provided by Boyd Campbell during the summer for the purpose of assisting Janet in teaching the children a strong work ethic and as a way of providing money to the children earned through their own effort, for school, recreation and savings purposes.

The Campbells also ask that they be given at least one (1) week's notice of the dates each child will receive church ordinances such as baptisms and priesthood ordinations and of the children's participation in school, church and sporting type events and the right to attend any such events.

After receiving counsels' proffers and arguments, the court conducted an in-chambers, off-the-record discussion with counsel. The court then interviewed the two oldest grandchildren in chambers and off the record.[3] At the request of counsel for Boyd and Beverly, the court then reiterated much of its discussion with counsel on the record. Ruling from the bench, the trial court expressed its "strong concerns" about the constitutionality of Utah Code Ann. § 30-5-2(1) (Supp. 1994). Section 30-5-2 permits the trial court to "grant grandparents and other immediate family members reasonable rights of visitation if it is in the best interest of the children." However, the trial court stated that "[t]he parent-child relationship is the primary relationship that should be enhanced," and questioned whether "the courts have discretion to [award grandparent visitation,] despite the language of the statute." The trial court then granted Boyd and Beverly only those minimal rights of visitation which Janet had previously agreed were appropriate.[4]

Boyd and Beverly appeal the trial court's visitation order, challenging the adequacy of the findings and claiming the court's analysis and resulting order were skewed by the trial court's view that section 30-5-2 is unconstitutional. Janet disputes Boyd's and Beverly's claims and further contends that she should be awarded attorney fees incurred in responding to this appeal, which she characterizes as frivolous.[5]

## ADEQUACY OF THE FINDINGS

▮ Rule 52(a), Utah Rules of Civil Procedure, requires that " '[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon.' " *Woodward v. Fazzio,* 823 P.2d 474, 477 (Utah App.1991) (quoting Utah R.Civ.P. 52(a)). To successfully challenge the findings, the appellant must ordinarily demonstrate they are clearly erroneous. *Id.* To make such a showing, appellant is required to marshall all the evidence supporting the findings and then demonstrate that the findings are not supported by legally sufficient evidence. *See id.*

▮ In the instant case, appellants do not marshall all the evidence in an effort to demonstrate that the court's findings—and its ensuing conclusion—are erroneous. Instead, appellants contend that the court's findings are insufficiently detailed—i.e., facially inadequate—to allow for meaningful review. We agree. As noted in *Woodward,* appellants need not engage in a futile marshalling exercise if they can demonstrate the findings, as framed by the court, are legally insufficient. *Id.* at 477-78. As explained in the following analysis, whatever may be said as to the "reasonableness" of the visitation ordered by the court, the more immediate problem in this case is that the findings are not sufficiently detailed to disclose the evidentiary basis for the court's decision and thereby allow for meaningful review. *See id.*

"Findings are adequate only if they are 'sufficiently detailed and include enough subsidiary facts to disclose the steps by which

---

3. The trial court did not record these interviews because it recognized the sensitive nature of the proceedings and did not want to further erode the already tenuous family relations. While we sympathize with the court's intentions, we note that sealing that portion of the proceedings may have been a better alternative because it would have protected the confidences of the children while still facilitating appellate review. "[I]t is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made." *Briggs v. Holcomb,* 740 P.2d 281, 283 (Utah App.1987).

4. The visitation schedule, as ordered by the court, granted Boyd and Beverly the following rights of visitation, subject to certain limitations concerning school activities and the like:

2. One (1) evening on the day before or after each child's birthday from 4:00 p.m. to 8:00 p.m. if the birthday occurs during the school year, and until 8:30 p.m. if the birthday occurs when school is not in session.
3. One (1) day during the Christmas holidays.
4. One-half (½) day during the Thanksgiving holiday.
5. The time and duration of the Campbell family reunion, provided that the Defendant/Mother is also invited to attend.
6. Once per month from 4:00 p.m. until 8:00 p.m. with one child of the Plaintiffs' choice for purposes of the development of a one-on-one relationship with that child.

5. Our resolution of this appeal conclusively dispels any suggestion that the appeal is frivolous.

the ultimate conclusion on each factual issue was reached.'" *Hall v. Hall,* 858 P.2d 1018, 1021 (Utah App.1993) (quoting *Allred v. Allred,* 797 P.2d 1108, 1111 (Utah App.1990)). In the instant case, the court failed to separate its findings of fact and conclusions of law in accordance with Rule 52(a). Instead, the court included eight numbered paragraphs under the heading "Findings of Fact and Conclusions of Law." After separating the court's legal conclusions from its findings of fact, we are left with but three actual findings to consider, the first two of which are too general to be of much help in reviewing the trial court's decision.[6] First, the court found that "[s]ome visitation of the children by the Plaintiffs will be beneficial and in the best interests and well-being of the children." Second, the court found that the litigation between the parties had been detrimental to the children. Third, the court found that Janet had stipulated to specific periods of visitation, and it found precisely that level of visitation to be "appropriate and reasonable." Its order was fashioned accordingly.

The court's first finding, that some visitation would be in the children's best interest, is conclusory. The court should have entered detailed findings to support its conclusion. Moreover, Janet had previously stipulated that some visitation was in her children's best interest. Thus, the only question before the court was what constituted reasonable visitation. A solitary finding that some visitation is in the best interest of the children, a proposition not in dispute, neither advances the trial court's analysis nor allows

for meaningful review of the reasonableness of a particular schedule of visitation.

Likewise, a finding that the present dispute between the parties has harmed the children by exposing them to the stress that inevitably accompanies litigation between family members, does not provide any insight as to why this particular schedule of visitation is in the children's best interest. Stated from a slightly different perspective, if the stress is due only to the litigation, what bearing does it have on how much visitation to permit, since, from all that appears, the stress will end when the litigation does? Apparently, spending time with their grandparents was not, in and of itself, a source of stress for the children. *See infra* note 8.

Finally, it is factually accurate that Janet agreed to a particular visitation schedule, but such agreement does not necessarily make that schedule of visitation reasonable. If court-ordered grandparent visitation were to be entirely dictated by the preferences of the parent, the statute would be rendered meaningless. It would be futile for a grandparent to sue for visitation rights if those rights would be ultimately limited to what a grandparent would receive as a matter of grace from the parent.[7]

Certainly, an important factor in deciding whether to award visitation and in determining the amount of visitation is the extent to which such visitation will disrupt the children's relationship with their parent. Applying this factor to the instant case, it is possible that the visitation requested by Boyd and

---

6. In addition to the three factual findings, the trial court made the following legal conclusions:

2. A Constitutional and fundamental right of Defendant/Mother is impinged upon [by] the statute, § 30-5-2.
3. Parents have great discretion with regard to the parent-child relationship. In addition to a duty of support for their children, parents have all legal responsibility for decisions affecting their children. The parent-child relationship is the only relationship given constitutional consideration in our society.
4. The statute, § 30-5-2, was not intended to provide a vested right of visitation in grandparents. The statute provides the court with discretion to order visitation when and if appropriate.
. . . .

6. The grandparents have to defer to Defendant/Mother's decisions in this relationship. The fact that the father is deceased does not change this.
7. The parent-child relationship is the primary relationship that should be enhanced. Further, it is in the interest of public policy to enhance this relationship by deferring to reasonable decisions by the parent.

7. In *Goolsbee v. Heft,* 549 S.W.2d 34 (Tex.App. 1977), the court came to the same conclusion when it expressly determined that the trial court's power to grant visitation was not subject to the will of the parent, because otherwise the statute providing grandparents visitation rights, if visitation is in the best interest of the grandchildren, would have been without practical effect. *Id.* at 35.

Beverly is unreasonable because it unduly interferes with Janet's ability to raise her children. On the other hand, there is a wide range of visitation options between the extensive visitation sought by Boyd and Beverly and the minimal visitation that Janet is willing to permit. It is for this reason the court must set forth, with as much precision as possible, subsidiary facts supporting its conclusions. *Cf. Woodward,* 823 P.2d at 478–79 (explaining what constitutes adequate findings to support termination of noncustodial father's parental rights).

Moreover, findings beyond the effect on the parent-child relationship may also be relevant in determining what constitutes a reasonable award of visitation in the best interest of the children. These include, but are not limited to, specific facts concerning the prior relationship and interaction between the children and the grandparents seeking visitation; the preferences of the children, due regard being given to their age and maturity;[8] the relationship among the children and between the children and any other individuals who may substantially affect their best interest; and the physical and mental health of all individuals involved. *See* Annotation, *Grandparent's Visitation Rights,* 90 A.L.R.3d 222, 229–30 (1979).

# CONSTITUTIONALITY OF STATUTE

Utah Code Ann. § 30–5–2 (Supp.1994) provides that "[t]he district court may grant grandparents and other immediate family members reasonable rights of visitation if it is in the best interest of the children."[9]

■ It is clear that the court's findings, and its ultimate conclusion, reflect the trial court's view that section 30–5–2 unconstitutionally restricts a parent's right to raise his or her children without interference by the State.[10] If the court's concerns were not well-founded, then the court's findings were, at least in part, the product of a misapprehension of the law, which is itself an adequate basis to remand for reconsideration. *Hoffman v. Life Ins. Co.,* 669 P.2d 410, 420–21 (Utah 1983). Because the constitutionality of section 30–5–2 will almost certainly arise again on remand, we turn our attention to that issue. *See* Utah R.App.P. 30(a); *Randle v. Allen,* 862 P.2d 1329, 1334 (Utah 1993); *Reeves v. Gentile,* 813 P.2d 111, 119 (Utah 1991).

■ We begin our analysis by reiterating "the well-settled proposition that all statutes are presumed to be constitutional." *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 637 (Utah 1989). *See Horton v. Utah*

---

**8.** The trial court interviewed the two oldest children in chambers. While the trial court did not disclose the full content of these interviews on the record, it did indicate that the children had not expressed a preference as to whether the court should order visitation.

**9.** A grandparent is now defined simply as "a person whose child is the parent of the grandchildren." Utah Code Ann. § 30–5–1(3) (Supp. 1994). Prior to the 1992 amendment, grandparents eligible for court-ordered visitation rights were restricted to "(a) grandparents whose child, who is the parent of the grandchildren, is dead, or, (b) grandparents whose child, who is the parent of the grandchildren, is divorced or legally separated from the other parent of the grandchildren." Utah Code Ann. § 30–5–1(2) (1989). While Boyd and Beverly fit the definition under either version of the statute, "we note that the state has a stronger argument for court intervention to protect the extended family when the nuclear family has been dissolved." *Hawk v. Hawk,* 855 S.W.2d 573, 580 n. 10 (Tenn.1993).

**10.** The court's analysis and the order of visitation based thereon are apparently influenced by its all-but-exclusive focus on the importance of maintaining the parent-child relationship. The court stated that it was

> not sure the courts have discretion to [award grandparent visitation,] despite the language of the statute. Even if they do, I question whether that results in a healthy relationship, because I think it absolutely does compromise and encroach upon and is in some ways detrimental to the relationship of authority, control and custody provided by the natural situation and those provided by statute of the natural parent.

The court opined that the State will not infringe upon a parent's right to raise his or her children unless "the parent is found to be absolutely unfit and the parent's influence on the children, or lack thereof, expose[s] the children to danger, unreasonably so." Because it was not suggested, nor would the evidence have supported the claim, that Janet was an unfit parent, the court refused to infringe upon her parental authority and limited its order of visitation to those parts of the visitation schedule to which she had previously agreed.

*State Retirement Bd.*, 842 P.2d 928, 934 (Utah App.1992). Moreover, we will not hold a statute to be unconstitutional unless it clearly contravenes a constitutional provision. *Baker v. Matheson*, 607 P.2d 233, 237 n. 2 (Utah 1979). *See Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 685 (Utah 1985). We strive to construe statutes so as to uphold them as consistent with both our state constitution and the federal constitution. *Society of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 934 n. 40 (Utah 1993). Furthermore, we will resolve all reasonable doubts concerning the constitutionality of a statute in favor of validity. *Baker*, 607 P.2d at 237 n. 2.

■ In the instant case, the trial court expressed significant concern regarding the constitutionality of section 30–5–2, recognizing that court-ordered grandparent visitation necessarily interferes with parental authority and may erode the fundamental autonomous relationship between parent and child. *See supra* note 10. The trial court's concern is not completely unfounded, as the United States Supreme Court has held that the right to raise one's children is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution.[11] In *Moore v. City of East Cleveland*, 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977) (plurality opinion), it was stated: "This Court has long recognized that freedom of personal choices in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."[12] *See, e.g., Planned Parenthood v. Casey*, —— U.S. ——, ——, 112 S.Ct. 2791, 2807, 120 L.Ed.2d 674 (1992) (plurality opinion) (recognizing "constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education"); *In re Castillo*, 632 P.2d 855, 856–57 (Utah 1981) (reaffirming parents' fundamental interest in maintaining relationships with their children).

However, the constitutionally protected right of family autonomy is not unfettered. There are many circumstances related to child health and well-being in which state intervention is constitutional. *See Ginsberg v. New York*, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968). In *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), the Court recognized that a "state has a wide range of power for limiting parental freedom" and thus "may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways."[13] *Id.* at 166–67, 64 S.Ct. at 442.

While parents have a constitutional right to make decisions affecting the family, the degree of the infringement by the state is a significant consideration in determining whether courts will strike a statute down as

---

**11.** In *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the Court stated that

> [w]hile this court has not attempted to define with exactness the liberty thus guaranteed [by the Fourteenth Amendment], ... [w]ithout doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, *to marry, establish a home and bring up children,* to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.

*Id.* at 399, 43 S.Ct. at 626 (emphasis added).

**12.** Although often expressed as a liberty interest, the protection of child-rearing autonomy reflects the Court's larger concern with privacy rights of the family. *See Moore v. City of East Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977) (plurality opinion) (reaffirming that "the Constitution protects the sanctity of the family"); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (recognizing existence of a "private realm of family life which the state cannot enter").

**13.** Over the years, there has been increased legislation designed to promote the safety, education, and physical and emotional welfare of children, even if at the expense of parental autonomy. For example, children may be excluded from school unless properly inoculated against disease, Utah Code Ann. § 53A–11–301 to –306 (1994); *see State ex rel. Cox v. Board of Educ.*, 21 Utah 401, 412–13, 60 P. 1013, 1015–16 (1900); parents cannot abuse or neglect their children, Utah Code Ann. § 76–5–109 (Supp.1994); restrictions are placed on the employment of children, Utah Code Ann. §§ 34–23–101 to –402 (Supp.1994); and children must be restrained when riding in a motor vehicle. Utah Code Ann. § 41–6–148.20 (1993).

unconstitutional. In *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), the Court considered the constitutionality of a Wisconsin statute prohibiting marriage by any resident with a child support obligation without a prior judicial determination that child support has been paid and that the minors " 'covered by the support order are not then and are not likely thereafter to become public charges.' " *Id.* at 375, 98 S.Ct. at 675 (quoting Wis.Stat. § 245.10(1) (1973)). Addressing the degree of permissible state infringement, the Court stated:

> By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.

*Id.* at 386, 98 S.Ct. at 681.

In a long line of cases, the Court has evaluated state regulation of fundamental rights with reference to the magnitude of the state's infringement on a particular fundamental right. In *City of Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), Justice O'Connor pointed out that

> not every regulation the State imposes must be measured against the State's compelling interests and examined with strict scrutiny....
>
> The requirement that state interference "infringe substantially" or "heavily burden" a right before heightened scrutiny is applied is not novel in our fundamental-rights jurisprudence, or restricted to the abortion context. In *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 37–38 [93 S.Ct. 1278, 1299–1300, 36 L.Ed.2d 16] (1973), we observed that we apply "strict judicial scrutiny" only when

legislation may be said to have " 'deprived,' 'infringed,' or 'interfered' with the free exercise of some such fundamental right or liberty." If the impact of the regulation does not rise to the level appropriate for our strict scrutiny, then our inquiry is limited to whether the state law bears "some rational relationship to legitimate state purposes." *Id.* at 40 [93 S.Ct. at 1300–01]. Even in the First Amendment context, we have required in some circumstances that state laws "infringe substantially" on protected conduct, *Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539, 545 [83 S.Ct. 889, 893, 9 L.Ed.2d 929] (1963), or that there be "a significant encroachment upon personal liberty," *Bates v. City of Little Rock,* 361 U.S. 516, 524 [80 S.Ct. 412, 417, 4 L.Ed.2d 480] (1960).

*Id.* at 461–62, 103 S.Ct. at 2509–10 (O'Connor, J., dissenting) (some citations omitted). *See also Planned Parenthood v. Casey,* —— U.S. ——, ——, 112 S.Ct. 2791, 2820, 120 L.Ed.2d 674 (1992) (plurality opinion) (applying undue burden test to determine constitutionality of state infringement on women's right to terminate pregnancy); *Webster v. Reproductive Health Servs.,* 492 U.S. 490, 509, 109 S.Ct. 3040, 3052, 106 L.Ed.2d 410 (1989) (holding state's refusal to fund abortions does not unduly burden women's right to have abortions).

With the foregoing principles in mind, we hold that the visitation rights authorized for grandparents under section 30–5–2 do not substantially infringe upon the parent's fundamental rights or the autonomy of the nuclear family.[14] Section 30–5–2 is narrowly tailored to require "reasonable" periods of temporary visitation only if the court finds visitation to be "in the best interest of the children." While grandparents are members of the extended family whom society recognizes as playing an important role in the lives of their grandchildren,[15] which recognition

---

**14.** Under section 30–5–2, grandparents are not the only parties permitted to petition the court for rights of visitation. "[O]ther immediate family members" may also petition the court for visitation rights.

**15.** *See Moore v. City of East Cleveland,* 431 U.S. 494, 504–05, 97 S.Ct. 1932, 1938–39, 52 L.Ed.2d 531 (1977). Historically, grandparents had no legal right of visitation. Laurence C. Nolan, *Honor Thy Father and Thy Mother: But Court–Ordered Grandparent Visitation in the Intact Family?,* 8 B.Y.U. J. Pub.L. 51, 57 (1993). *See King v.*

has been given added meaning in this State by the Legislature's policy judgment underlying section 30–5–2, the statute does not presume that grandparent visitation is necessarily in the children's best interest. *Cf.* Utah Code Ann. § 30–3–32(2) (Supp.1994) (providing that visitation with noncustodial parent following divorce is presumed to further child's best interest). Instead, the burden is on the grandparents, as the petitioning party, to demonstrate by a preponderance of the evidence that court-ordered visitation is in the children's best interest.[16] If such a showing is made, it then falls to the court to evaluate the evidence, assess the circumstances, and carefully devise a visitation schedule that is in the children's best interest.

▮ If the statute gave grandparents an unrestricted vested right of visitation, we would be far more likely to question its constitutionality. But under the existing statutory scheme, a court cannot grant visitation until an action is filed in district court, a hearing is conducted before a judge or commissioner, and detailed findings of fact and conclusions of law are entered explicitly demonstrating that the best interests of the children will be served by granting visitation. Moreover, the visitation schedule is in no way permanent, but may be modified as necessary to meet the evolving best interests of the children.[17] Such judicial oversight adequately protects the integrity of the family while promoting the welfare of the children.

The Legislature promulgated section 30–5–2 to promote intergenerational contact and strengthen the bonds of the extended family. Modern society has witnessed a general trend toward the disintegration of the nuclear family. Changes in the demographics of domestic relations, the rise in the divorce rate, and the increasing numbers of children born to single parents are but a few of the factors contributing to the destabilization of the traditional nuclear family. Given such circumstances, it is not unreasonable for our Legislature to attempt to strengthen intergenerational ties as an alternative or supplementary source of family support for children. Therefore, we conclude that, because grandparent visitation as provided by section 30–5–2 is rationally related to promoting the State's legitimate interest in fostering relationships between grandparents and their grandchildren, the statute is constitutional.[18]

*King,* 828 S.W.2d 630, 632 (Ky.), *cert. denied,* —— U.S. ——, 113 S.Ct. 378, 121 L.Ed.2d 289 (1992). However, the promulgation of section 30–5–2 indicates that our Legislature now considers the grandparent-grandchild relationship important enough to warrant grandparent visitation rights in appropriate cases. *See Gribble v. Gribble,* 583 P.2d 64, 66 (Utah 1978). Moreover, in recent years, "the grandparent-grandchild relationship has received increasing attention from both state legislatures and courts." *Ward v. Ward,* 537 A.2d 1063, 1067 (Del.Fam.Ct.1987). As of 1993, every state had "enacted grandparent visitation statutes, allowing grandparents to petition the court for visitation under certain circumstances." Nolan, *supra,* at 52.

**16.** It appears that the commissioner, at the order to show cause hearing, erroneously shifted this burden, requiring Janet to prove that grandparent visitation was not in her children's best interest.

**17.** We previously have noted that res judicata does not apply to " 'child custody and related proceedings ... where the welfare of children is at stake.' " *Larson v. Larson,* 888 P.2d 719, 722 n. 2 (Utah App.1994) (quoting *In re J.J.T.,* 877 P.2d 161, 163 (Utah App.1994)). Thus, any interested party may petition the court to modify an award of grandparent visitation if that party can show that the ordered visitation is no longer in the best interests of the child. We save for another day the question of whether the party seeking the modification must demonstrate, in the context of grandparent visitation, a material change of circumstances in order to modify visitation provisions already in place. *Cf., e.g., Moore v. Moore,* 872 P.2d 1054, 1055 (Utah App. 1994) (requiring material change of circumstances not contemplated in original decree in order to modify alimony award).

**18.** We note that the vast majority of courts that have addressed the constitutionality of grandparent visitation statutes authorizing visitation if in the best interest of the child, have upheld those statutes as constitutional. *See Sketo v. Brown,* 559 So.2d 381, 382 (Fla.App.1990); *Bailey v. Menzie,* 542 N.E.2d 1015, 1020 (Ind.App.1989); *Spradling v. Harris,* 13 Kan.App.2d 595, 778 P.2d 365, 368 (1989); *King v. King,* 828 S.W.2d 630, 631–32 (Ky.), *cert. denied,* —— U.S. ——, 113 S.Ct. 378, 121 L.Ed.2d 289 (1992); *Herndon v. Tuhey,* 857 S.W.2d 203, 208 (Mo.1993) (en banc); *Roberts v. Ward,* 126 N.H. 388, 493 A.2d 478, 481 (1985); *People ex rel. Sibley v. Sheppard,* 54 N.Y.2d 320, 445 N.Y.S.2d 420, 423, 429 N.E.2d 1049, 1052 (1981); *Deweese v. Crawford,* 520 S.W.2d 522, 526 (Tex.App.1975). While the Ten-

And because grandparent visitation, as provided by section 30–5–2, does not unduly burden a parent's autonomous right to raise his or her children, we do not apply strict scrutiny to determine the statute's constitutionality. Instead, we hold the statute to be constitutional because it is rationally related to furthering a legitimate state interest.

## CONCLUSION

Because the trial court believed section 30–5–2 was unconstitutional, the court entered its findings and fashioned its order in an analytically flawed way, being overly solicitous of the parent-child relationship. We hold that the trial court erred, as a matter of law, by failing to apply the best-interests-of-the-children standard mandated by section 30–5–2. Moreover, the court's findings of fact were not sufficiently detailed to permit meaningful appellate review. Accordingly, we vacate the court's order and remand for the entry of detailed findings explaining whether visitation with their grandparents is in the children's best interest, and, if so, in what amount and on what terms, and for the entry of an appropriate order consistent with such findings.

GARFF and WILKINS, JJ., concur.

nessee Supreme Court has held that Tennessee's grandparent visitation statute is unconstitutional under the Tennessee Constitution, the court did not decide whether the statute is unconstitutional under the United States Constitution. *See Hawk v. Hawk*, 855 S.W.2d 573, 582 (Tenn.1993). To

date, only Georgia has declared a statute permitting court-ordered grandparent visitation, if in the best interest of the child, to be unconstitutional under the United State Constitution. *See Brooks v. Parkerson*, 265 Ga. 189, 454 S.E.2d 769, 773–74 (1995).