1997 ND 14

James PETERSON and Elsie Peterson, Plaintiffs and Appellees,

v.

Tracy PETERSON, Defendant and Appellant,

v.

Kent PETERSON, Involuntary Defendant and Appellant.

Civil No. 960203.

Supreme Court of North Dakota.

Feb. 12, 1997.

000 in lifetime gifts of land, all without estate taxes. See n. 2 ante.

[redacted]

[redacted]

Pamela J. Hermes (argued), of Vogel, Kelly, Knutson, Weir, Bye & Hunke, Ltd., Fargo, for plaintiffs and appellees.

Kevin Erickson (argued), of Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, for defendant and appellant. Appearance by Mark Fraase.

MESCHKE, Justice.

[¶ 1] Kent and Tracy Peterson appealed from an order continuing and expanding visitation rights for James and Elsie Peterson, the paternal grandparents of Kent and Tracy's son, Brett. We conclude the visitation order is clearly erroneous, and we remand for further proceedings consistent with this opinion.

[¶ 2] Kent and Tracy were married in June 1990, and Brett was born on October 1, 1992. Kent and Tracy developed marital conflicts and, for more than a year, Kent lived and farmed with his parents on their farm in Ransom County, while Tracy and Brett lived about 25 miles away in an apartment in Valley City. In July 1995, James and Elsie Peterson petitioned under NDCC 14–09–05.1 for the court to compel Tracy to allow their visitation with Brett, claiming she refused them visits since January 1993. The parties attempted to mediate visitation. Although Kent was not a named party, he voluntarily participated in the mediation. The parties agreed the trial judge would mediate and, if mediation failed, the judge would decide visitation from the parties' communications during mediation, without holding a formal evidentiary hearing.

[¶ 3] Mediation failed, and on December 7, 1995, the trial judge ordered grandparent visitation for James and Elsie through April 1996 "on Saturday, the first and third weekend of every month from 10 a.m. through 7 p.m.," and thereafter "the first Saturday of each month from 10 a.m. to 7 p.m. and on the third weekend of the month from Friday at 7 p.m. to Saturday at 7 p.m." The court also specifically set December visitations, including the Christmas holiday. Neither side appealed from this order.

[¶ 4] During January 1996, Kent and Tracy reconciled and moved with Brett to an apartment in Fargo. Kent quit farming and began a construction job, and Tracy became a full-time homemaker. Contemporaneously with that reconciliation, James and Elsie sought an order to show cause, alleging Tracy was not complying with the visitation order. After a hearing, the trial court found Tracy in contempt, ordered her to pay $500 for the grandparent's costs and attorney fees, and declared future violations would subject Tracy "to further civil contempt proceedings and the court will recommend criminal prosecution." Again, neither side appealed the court's order.

[¶ 5] In April 1996, Tracy moved to vacate the visitation order or, alternatively, to modify it to allow visits only on the first Sunday of every other month between, 1:00 p.m. and 5:00 p.m. The trial court on May 29, 1996, held an evidentiary hearing on the motion and, during that hearing and on its own initiative, joined Kent as an involuntary defendant.

[¶ 6] Kent and Tracy argued to the trial court that NDCC 14–09–05.1 unconstitutionally infringed on their fundamental right to be free from undue state interference as parents in raising their child. They also argued the scope of the ordered visitation unreasonably infringed on their parental roles in raising Brett. They testified the twice monthly weekend visitations reduced Kent's overtime hours and income, made it difficult to enroll Brett in gymnastics and

other extracurricular programs, and made it more difficult to plan family outings and activities.

[¶ 7] On July 8, 1996, the court entered findings, conclusions, and an order continuing and expanding the visitations. The court recognized Kent and Tracy's reconciliation and reunion as a family was a significant change in circumstances since the initial visitation order, but concluded it was still in Brett's best interest for the grandparents visits to continue. The court ordered those visitations take place on "the first Saturday of each month from 10 a.m. to 7 p.m. and on the third weekend of each month from 10 a.m. on Saturday to 5 p.m. on Sunday," while slightly modifying the December visitations. The court neither decided nor discussed the constitutional objections by Kent and Tracy. They appealed.

[¶ 8] Kent and Tracy contend the trial court lacked subject matter jurisdiction to order visitations, because it did not comply with the statutory mediation procedures under NDCC Ch. 14–09.1. The purpose of that chapter is to encourage voluntary resolution of child custody, support, and visitation disputes. NDCC 14–09.1–01. The statute directs the court to "appoint a mediator from a list of qualified mediators approved by the court." NDCC 14–09.1–03. All communications in mediation proceedings are made confidential and inadmissible as evidence in any court proceeding. NDCC 14–09.1–06. If mediation fails, the mediator "may recommend to the court that a full hearing" be held but "may not make a substantive recommendation to the court." NDCC 14–09.1–08. Kent and Tracy argue the judge failed to follow these mandated procedures when he acted as both mediator and judge after mediation failed and, therefore, the court lacked subject matter jurisdiction to enter a valid visitation order.

[¶ 9] Subject matter jurisdiction is the court's power to hear and determine the general subject of the action. *Cordie v. Tank*, 538 N.W.2d 214, 217 (N.D.1995). NDCC 14–09–05.1 specifically gives the district court jurisdiction of a petition for grandparent visitation in a civil action. Assuming the trial judge did not comply with the statutory mediation procedures, his procedural error did not extinguish the court's jurisdiction

over the subject matter of the action. Subject matter jurisdiction is not determined by whether the court correctly applies a statute to a particular claim because, to hold otherwise, would vest subject matter jurisdiction in the court subject to divestment upon an erroneous ruling. *Rott v. Connecticut General Life Ins. Co.*, 478 N.W.2d 570, 574 (N.D. 1991). The trial court's misapplication of a statute may be grounds for appeal, but it neither implicates subject matter jurisdiction nor personal jurisdiction. *Matter of Estate of Hansen*, 458 N.W.2d 264, 268 (N.D.1990). We hold the district court had subject matter jurisdiction of James and Elsie Peterson's petition for grandparent visitation.

[¶ 10] Furthermore, the parties agreed to vary from the statutory mediation procedure. They agreed to forego an evidentiary hearing and, if mediation failed, to have the trial judge decide visitation from the communications during the mediation. By consenting to the procedure used by the court, the parties voluntarily waived their right to the statutory procedures. *See Binder v. Binder*, 557 N.W.2d 738 (N.D.1996) (a party can waive due process rights if done in a knowing, voluntary, and intelligent manner).

[¶ 11] Kent and Tracy assert NDCC 14–09–05.1 unconstitutionally infringes on their fundamental right, guaranteed by the Fourteenth Amendment to the United States Constitution, as parents to be free from undue state interference in raising their child.

[¶ 12] Natural parents have the right, superior to that of any person, to the custody and companionship of their children. *In Interest of E.J.H.*, 546 N.W.2d 361, 364 (N.D. 1996). Parental choices about the upbringing of children, like those about marriage and family life, are among those associational rights that the United States Supreme Court has ranked "of basic importance in our society," *Boddie v. Connecticut*, 401 U.S. 371, 376, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971), and are "sheltered by the Fourteenth Amendment against the state's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, —— U.S. ——, ——, 117 S.Ct. 555, 564, 136 L.Ed.2d 473 (1996) (under

Due Process and Equal Protection Clauses, state may not impose advance record-preparation fees to block impoverished parents' access to appellate review of evidentiary sufficiency to terminate parental rights for unfitness); *see also Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (due process requires clear and convincing evidence to terminate parental rights); *Lassiter v. Dep't of Social Serv. of Durham County,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (no automatic right to appointed counsel in state's action to terminate parental status, but appointment due when character and difficulty of case warrants); *Wisconsin v. Yoder,* 406 U.S. 205, 231, 92 S.Ct. 1526, 1541, 32 L.Ed.2d 15 (1972) (recognizing right of "parental control over the religious upbringing and education" of Amish children unless overridden by compelling state interest in education); *Boddie,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (state cannot deny divorce for married couple's inability to pay $60 court fees); *Pierce v. Soc'y of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (state cannot compel instruction by public teachers only); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (state law forbidding teaching language other than English invades liberty guaranteed by Fourteenth Amendment). As we explained in *Matter of Adoption of K.A.S.,* 499 N.W.2d 558, 564 (N.D.1993), "parents have a fundamental constitutional right to parent their children which is of the highest order."

[¶ 13] Still, the North Dakota Century Code broadly authorizes the courts to compel visitation with unmarried minor grandchildren for grandparents:

> The grandparents of an unmarried minor must be granted reasonable visitation rights ... to the minor by the district court upon application by the grandparents ... unless a finding is made that visitation is not in the best interests of the minor. Visitation rights of grandparents to an unmarried minor are presumed to be in the best interest of the minor. The court shall consider the amount of personal contact that has occurred between the grandparents ... and the minor and the minor's parents.... If no district court otherwise has jurisdiction, a proceeding to enforce grandparental rights may be brought against the custodial parent as a civil action and venued in the county of residence of the minor child.

NDCC 14–09–05.1. As originally enacted in 1983, this section only allowed the court to order grandparent visitation "upon a finding that visitation would be in the best interests of the minor and would not interfere with the parent-child relationship." S.L.1983, Ch. 179 § 1; *Schempp–Cook v. Cook,* 455 N.W.2d 216, 217 (N.D.1990). As amended in 1993, S.L.1993, Ch. 150, § 1, however, this section now creates a presumption that grandparent visitations are in the grandchild's best interests and requires the court to grant visitation "unless a finding is made that visitation is not in the best interests of the minor."

[¶ 14] As a result of this 1993 amendment, a very serious question exists whether this statute exceeds the constitutionally permissible bounds of state interference in parents' rights to raise their children. Courts in other states have struggled with constitutional challenges to grandparent visitation statutes, and the constitutionally permissible scope of court-ordered grandparent visitation is yet unclear. However, precedents elsewhere supply useful analysis and insight for applying and construing statutes that create grandparent visitation rights.

[¶ 15] Some courts have struck down like statutes, concluding court ordered grandparent visitation impermissibly interferes with parents' constitutional rights to rear their children. *Brooks v. Parkerson,* 265 Ga. 189, 454 S.E.2d 769, 774, (1995) (grandparent visitation statute unconstitutional because it did not clearly promote health and welfare of the child nor require showing of harm before state interference); *Hawk v. Hawk,* 855 S.W.2d 573, 577 (Tenn.1993) (unless substantial danger of harm to child shown, court cannot constitutionally order grandparent visitation by imposing subjective notions of best interests of child on intact, nuclear family with fit parents); *Beagle v. Beagle,* 678 So.2d 1271, 1276 (Fla.1996) (grandparent visitation statute cannot be constitutionally applied to allow court ordered visitation for a child living with both natural parents when one of them objects to visitation).

[¶ 16] Other courts, while recognizing parents' constitutional rights to raise their children without undue state interference, have upheld grandparent visitation statutes that have restraints on the extent of interference. *Michael v. Hertzler*, 900 P.2d 1144, 1151 (Wyo.1995) (upheld statute limiting grandparent visitation to where family disrupted by death or separation of the parents or after grandchild resided with grandparents over six months); *Campbell v. Campbell*, 896 P.2d 635, 642 (Utah App.1995) (narrowly tailored statute constitutional when reasonable visitation ordered only if court finds it in child's best interest); *Ridenour v. Ridenour*, 120 N.M. 352, 901 P.2d 770, 774 (1995)(upheld statute requiring grandparents to make threshold showing family disrupted and to prove visitations in child's best interests); *R.T. v. J.E.*, 277 N.J.Super. 595, 650 A.2d 13, 16 (1994) (upheld statute requiring grandparents to prove visitation in child's best interests and requiring court to consider eight specific factors); *Herndon v. Tuhey*, 857 S.W.2d 203, 210 (Mo.1993) (upheld statute "narrowly tailored" to protect interests of child and parents); *King v. King*, 828 S.W.2d 630, 632 (Ky.1992) (upheld statute requiring court to find visitations in child's best interests).

[¶ 17] Balancing the relative interests of the children, parents, and grandparents, the Wyoming Supreme Court in *Michael v. Hertzler*, 900 P.2d at 1151, concluded the Wyoming grandparent visitation statute was sufficiently limited to survive constitutional challenge:

> We are satisfied this statute is sufficiently narrowly drawn. Only a grandparent is afforded the opportunity to file for visitation. The circumstances are limited to an instance in which the grandparent's child, who is the parent, has died or has divorced the other parent, and the person having custody has refused reasonable visitation; or an instance in which an unmarried minor grandchild has resided with the grandparent for more than six months before being returned to the custody of the grandchild's parents, and those parents have refused reasonable visitation rights. We understand weighing of the fundamental interests of the parents, grandparents, and children is not an easy task. It will be

a difficult decision in many instances, but the standard incorporated in the statute, the best interest of the child, is well recognized, and the court clearly can control those rights so the rights of the parents will not be substantially impaired.

[¶ 18] In *Campbell v. Campbell*, 896 P.2d at 643, the Utah Court of Appeals concluded the Utah grandparent visitation statute did not unconstitutionally infringe upon the parents' rights, because it was narrowly tailored to allow only reasonable periods of temporary visitation when found to be in the best interests of the children. Yet the court cautioned:

> [T]he statute does not presume that grandparent visitation is necessarily in the children's best interest. . . . Instead, the burden is on the grandparents, as the petitioning party, to demonstrate by a preponderance of the evidence that court-ordered visitation is in the children's best interest. . . . If the statute gave grandparents an unrestricted vested right of visitation, we would be far more likely to question its constitutionality.

[¶ 19] Other courts have deflected constitutional challenges to visitation statutes by narrowly construing them within permissible constitutional parameters. In *Castagno v. Wholean*, 239 Conn. 336, 338, 684 A.2d 1181, 1183 (1996), a statute authorized forced visitation with any petitioning person upon a finding the visits would be in the child's best interests. The Connecticut Supreme Court narrowly construed the statute to avoid potential constitutional problems, holding visitation could only be compelled "in those instances in which the integrity of the family already has been disrupted." *Castagno* at 1186. The court explained its reasons for this narrow interpretation:

> [T]he [grandparents] argue that any third party who seeks state intervention, in the form of a court's grant of visitation rights, may petition the court at any time, and need not present any allegations that the minor child's family is no longer intact. . . . We disagree.
>
> \*     \*     \*     \*     \*     \*
>
> Such a construction would be a radical departure from the common law and from

the deeply ingrained tradition of family autonomy in such matters, would raise serious concerns about the effect of the statute on intact families and the constitutionally protected privacy interests of those families ... We therefore construe the statute to avoid such an unreasonable interpretation.

At common law, grandparents, or third parties in general, have no right to visitation. Rather, the decision as to who may or may not have access to a minor child has been deemed an issue of parental prerogative.... All families may have, at one time or another, unhappy conflicts and disputes among adult relatives that might result in an absence of contact between those adults and their minor relatives—be they grandchildren, nieces or nephews, cousins, etc.—but long-standing tradition holds that, absent compelling circumstances justifying some state intervention in the form of a judicial order, the parents' decision, whether wise or not, prevails.

*Castagno,* 684 A.2d at 1183–1185. Only compelling circumstances should justify governmental intervention to override parental choices for their children's associations beyond the immediate household.

[¶ 20] The Nevada Supreme Court reversed grandparent visitation ordered over the objection of the child's parents, who were divorced but held joint legal and physical custody of their minor son. *Steward v. Steward,* 111 Nev. 295, 890 P.2d 777, 782 (1995). The Nevada statute permitted grandparent visitation with an unmarried minor grandchild if the parental rights of either parent had been terminated or if one parent was deceased, divorced, or separated from the other. The court reviewed the statute's legislative history and narrowly construed it as creating a presumption against court-ordered grandparent visitation when parents, although divorced, had full legal rights to their child and jointly objected to the visitations. The court explained:

> Absent the presentation of clear and convincing evidence showing otherwise, the court should not interfere with the decision of the natural parents.

Interpreting the statute otherwise would have the absurd result of permitting the state to intrude solely because the parties are divorced, regardless of the fact that both parents are in agreement as to what was in the best interests of their child, and regardless of the fact that both parents have full legal rights to the child and have never abdicated their parental responsibility. Additionally, any other interpretation would undermine the natural parents' liberty interest in the care, custody, and management of their children.

*Steward,* 890 P.2d at 782; *see also Sketo v. Brown,* 559 So.2d 381, 382 (Fla.App.1990) (held statute not facially unconstitutional for authorizing continuing visits with grandparents upon reasonable terms and conditions, but reversed visitations ordered as "too extensive and unreasonable").

[¶ 21] Although Kent and Tracy challenged the constitutionality of NDCC 14–09–05.1, the trial court neither addressed nor decided the constitutional question. We are at a loss to understand why.[1] Still, because the trial court did not consider the constitutional question and because we here reverse and remand for other reasons, we will not decide the statute's constitutionality in this case, either.

[¶ 22] Generally, we do not decide constitutional questions unless they are necessary to our decision. *State v. King,* 355 N.W.2d 807, 809 (N.D.1984). Nevertheless, the constitutional rights of these parents must be significantly factored into the trial court's decision on remand.

[¶ 23] In its July 8, 1996 order, the trial court increased visitations on the third weekend of each month about seven hours, ordering visits from 10:00 a.m. on Saturday to 5:00 p.m. on Sunday. Kent and Tracy urge the trial court's continuation and expansion of grandparent visitation was clearly erroneous. We agree. A trial court's decision on modification of visitation is a finding of fact that will not be reversed unless clearly erroneous. *Iverson v. Iverson,* 535

---

1. The grandparents argue constitutionality was not timely raised. We disagree. Kent was not made a formal party defendant to these proceedings until the May 29, 1996 hearing. He then raised its constitutionality. This was timely.

N.W.2d 739 (N.D.1995). It is error for a court to direct grandparent visitation privileges under NDCC 14–09–05.1 that are not requested. *Alvarez v. Carlson*, 474 N.W.2d 79, 82 (N.D.1991). We conclude the July 8, 1996 visitation order here is clearly erroneous because the court expanded visitation hours without a request by the grandparents to do so.

[¶ 24] We conclude the trial court's visitation order is also clearly erroneous because, against the wishes of both parents, the court imposed substantial visitation that clearly interferes with parental choices. Kent and Tracy testified the lengthy commute for the visits prevents Kent from working overtime on those weekends, resulting in reduced family income. Kent testified he loves his parents, but the court-ordered visits are too frequent and too structured, and they substantially curtail the time available for he and Tracy to engage in family activities alone with Brett. Tracy testified the visitations also make it difficult for her to schedule Brett in weekend classes or activities with his peers, such as the community gymnastics program.

[¶ 25] The trial court appropriately found there has been a significant change of circumstances since the original visitation order because Brett and his parents are again united as a family. But, the court failed to give sufficient deference to that factor in continuing and expanding visitation over Kent and Tracy's objections. The court's visitation order was therefore clearly erroneous, and the court must redetermine the petition for visitation.

[¶ 26] In applying NDCC 14–09–05.1 to these circumstances, the court must carefully consider Kent and Tracy's constitutional rights as Brett's parents to raise him as they reasonably see fit. The court ordered visitations imposed on this family, if any, must not unduly interfere with reasonable parental choices. The lower court must cautiously apply the statute, bearing in mind that a statute must be construed in harmony with the constitution to avoid constitutional infirmities. *State ex rel. Sprynczynatyk v. Mills*, 523 N.W.2d 537, 540 (N.D.1994). As *Southeast Cass Water Resource Dist. v. Burlington Northern Railroad Co.*, 527 N.W.2d 884, 890 (N.D.1995), illustrates, if a statute is capable of two constructions, one that would render it of doubtful constitutionality and one that would not, the constitutional interpretation must be selected.

[¶ 27] In her motion, Tracy demonstrated a willingness to give Brett time with his paternal grandparents, suggesting visits on the first Sunday of every other month. She also testified she would not object to the grandparents coming for unscheduled visits. Kent testified that, even without a court order, he believed a normal relationship could develop between Brett and his grandparents. Apparently and happily, this litigation has not yet created an irreversible rift between the parties. Also, Tracy testified she and Kent were expecting a second child in October 1996. Undoubtedly, these grandparents have a better remedy than more litigation; they could seek to develop and promote positive relationships with their son and daughter-in-law that will foster exchange of voluntary family visits that include the grandchildren.

[¶ 28] It would be far better for these families to voluntarily interact than to have their social interaction regulated by court orders with the threat of contempt. The courts have the power to order people to adhere to a schedule, and the courts can enforce compliance. But courts cannot heal the broken hearts or excise the emotional scars that come from years of family feuding. Nothing prevents these families from voluntarily adjusting their differences in a spirit of compromise and cooperation to accomplish the best interests of all.

[¶ 29] We conclude the trial court's order is clearly erroneous, and we reverse and remand for redetermination of the motion to modify the visitation order in accordance with this opinion.

[¶ 30] VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.