1999 ND 139

**Lynn LOVE, f/k/a Lynn Carsen, Plaintiff and Appellant,**

v.

**Kelly DeWALL, Ted DeWall and Dorothy DeWall, Defendants and Appellees.**

No. 990030.

Supreme Court of North Dakota.

July 15, 1999.

Theresa L. Zimmerman, American Legal Services, Bismarck, for plaintiff and appellant.

Dorothy DeWall and Ted DeWall, pro se, Bismarck; Kelly DeWall, pro se, Mantador, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Lynn Love appealed from a trial court order granting her request to move with her son, D.C., to Arizona. She asserts the order which awards Kelly DeWall, D.C.'s father, and Ted and Dorothy DeWall, D.C.'s paternal grandparents, one-month summer visitation is clearly erroneous. We conclude the trial court's decision is not clearly erroneous and therefore affirm the order of the trial court.

### I.

[¶ 2] Lynn Love and Kelly DeWall are D.C.'s biological parents. D.C. was born on July 6, 1992. In September 1995, the trial court determined neither Lynn nor Kelly was a fit parent and awarded custody of D.C. to Ted and Dorothy DeWall. The trial court stated in its decree that the custody decision could be reviewed in one year. However, the court ordered if either Kelly or Lynn sought custody of D.C. after one year, he or she must present evidence demonstrating compliance with recommended psychological and chemical addiction evaluations; regular child support payments; ongoing visitation with D.C.; the ability to support D.C.; and positive participation in parenting classes.

[¶ 3] Lynn filed a motion to modify the custody decree to award her full custody of D.C. in November 1996. Lynn informed the trial court that she had recently married Tom Love and had complied with the court's requirements detailed in the original custody decree. In March 1997, after reviewing the court-appointed Guardian Ad Litem's (GAL) report and recommendations [1], the trial court ordered:

1. Lynn Love is granted extended weekend visitation with [D.C.] every other weekend beginning March 7, 1997. The visitation will begin at 4 p.m. on Friday and last through 4 p.m. on Sunday. There must be observation of visitation for a period of approximately 1 hour each month by a professional who could provide objective information regarding the visitation.

2. Assuming the extended visitation goes well, temporary custody of [D.C.] will be placed with Lynn Love on June 13, 1997. The limited observation of interaction would continue for at least 90 days.

. . . .

5. Kelly DeWall's visitation is limited to visitation supervised by his par-

ents or the Family Safety Center and limited to four hours one time each week.

. . . .

8. Ted and Dorothy DeWall are granted visitation with [D.C.] for one weekend each month if [D.C.] is placed in Lynn Love's custody on either a temporary or permanent basis. They are also granted a shorter visit one time each month.

Following the court-ordered periods of extended visitation and temporary custody, the trial court granted Lynn sole custody of D.C. in December 1997. Ted and Dorothy were awarded visitation with D.C. one weekend each month. The trial court ordered that Kelly could have supervised visitation with D.C. during the one weekend each month that his parents exercised visitation. Neither Kelly nor Lynn appealed from the trial court's order.

[¶ 4] In September 1998, Lynn filed a motion to terminate the DeWalls' visitation and requested court permission to move with D.C. to Arizona. Ted and Dorothy sent a letter to the trial court requesting that Lynn's motion be denied, and they be awarded custody of D.C. The trial court ordered the GAL to submit a report and recommendation on the motions. The GAL recommended the trial court grant Lynn's motion to relocate and recommended Ted and Dorothy be granted a minimum of one month summer visitation. Relying on the GAL's report and recommendations, the trial court granted Lynn's motion to move to Arizona and awarded the DeWalls visitation during July each year. The court ordered Lynn to provide extensive monthly reports to Ted, Dorothy, and Kelly about D.C.'s health, school performance, and social activities.

### II.

[¶ 5] Lynn asserts the trial court's order granting the DeWalls visitation during

---

1. Under N.D.R.Ct. 8.6 adopted by this court, to be effective on March 1, 2000, the duties performed by the GAL in this case would be handled by a custody investigator.

July is clearly erroneous for four reasons: (1) the one-month visitation period is too long and makes it too difficult for her to enroll D.C. in any summer activities in Arizona; (2) D.C. will be denied an opportunity to develop a relationship with her husband's two children from a previous marriage that visit him in July; (3) she will miss D.C.'s July birthday every year; and (4) there is too much animosity in her relationship with Ted and Dorothy.

[¶ 6] This court will not reverse a trial court's finding on visitation unless it is clearly erroneous. *Lohstreter v. Lohstreter*, 1998 ND 7, ¶ 10, 574 N.W.2d 790 (citation omitted). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if after review of the evidence, this court has a definite and firm conviction a mistake has been made. *Id.* After reviewing the evidence in the record, we are not left with a definite and firm conviction a mistake has been made in this case.

[¶ 7] Lynn relies on our decision in *Peterson v. Peterson*, 1997 ND 14, 559 N.W.2d 826 to support her assertion that the trial court's decision is clearly erroneous. However, such reliance is misplaced. In *Peterson*, at ¶ 11, this court addressed N.D.C.C. § 14–09–05.1, North Dakota's grandparent visitation statute. Under N.D.C.C. § 14–09–05.1 "grandparents of an unmarried minor must be granted reasonable visitation rights ... by the district court upon application by the grandparents ... unless a finding is made that visitation is not in the best interests of the minor." [2] In *Peterson*, at ¶ 1, Kent and Tracy Peterson appealed from an order continuing and expanding the paternal grandparents' visitation with their son after they had reconciled. We concluded the trial court's decision to continue and expand visitation to include monthly weekend visitation was clearly erroneous because the substantial amount of court imposed visitation interfered with parental choices. *Id.* at ¶¶ 7, 24.

[¶ 8] Here, Lynn fails to recognize the unique facts and circumstances of this case which distinguish it from the facts in *Peterson v. Peterson*, 1997 ND 14, 559 N.W.2d 826. This court has recognized a natural parent's superior right to a child's custody and companionship absent exceptional circumstances. *Matter of the Guardianship and Conservatorship of Nelson*, 519 N.W.2d 15, 17 (N.D.1994). However, a parent's right is not absolute. *Id.* We have noted special circumstances require scheduled visitation with someone who is not a child's parent when it is in the child's best interests. *Id.* at 20. This is such a case.

[¶ 9] In cases of exceptional circumstances, this court has concluded psychological parents had appropriately been granted custody of a child over a child's biological parents. *See, e.g., Nelson*, 519 N.W.2d at 17; *Mansukhani v. Pailing*, 318 N.W.2d 748, 754 (N.D.1982); *Hust v. Hust*, 295 N.W.2d 316, 319 (N.D.1980) (discussing cases in which this court upheld a custody award of a minor child to the grandparents). "Those persons who provide a child's daily care and who, thereby, develop a close personal relationship with the child become the psychological parents to whom the child turns for love, guidance, and security." *Patzer v. Glaser*, 396

2. In *Hoff v. Berg*, 1999 ND 115, ¶ 18, 595 N.W.2d 285, (footnote omitted), we recently concluded "N.D.C.C. § 14–09–05.1, as amended in 1993, is unconstitutional to the extent it requires courts to grant grandparents visitation rights with an unmarried minor unless visitation is found not to be in the child's best interests, and presumes visitation rights of grandparents are in a child's best interests, because it violates parents' fundamental liberty interest in controlling the persons with whom their children may associate, which is protected by the due process clause of our state and federal constitutions." Our decision nullified the part of the 1993 amendment of N.D.C.C. § 14–09–05.1 we declared unconstitutional and left the 1983 statute intact until its valid repeal or amendment. *Id.* at ¶ 19.

N.W.2d 740, 743 (N.D.1986). The record in this case demonstrates Ted and Dorothy were D.C.'s psychological parents during the early stages of his life at a time when Lynn and Kelly were unable to take care of him. The GAL's numerous reports and the trial court's findings strongly suggest that bond still exists today. Therefore, this is not a typical grandparent visitation case as discussed in *Peterson v. Peterson,* 1997 ND 14, 559 N.W.2d 826 and most recently in *Hoff v. Berg,* 1999 ND 115, 595 N.W.2d 285.

[¶ 10] Ted and Dorothy DeWall served as D.C.'s custodial parents from September 1995 to June 1997. Lynn moved for a redetermination of custody after complying with the trial court's order in the initial custody decree. She was awarded temporary extended visitation, but Ted and Dorothy were granted visitation with D.C. for "one weekend each month," and "a shorter visit one time each month." Neither Lynn nor Kelly appealed from that order. In December 1997, the trial court ordered that "Ted and Dorothy DeWall will be granted visitation of [D.C.] for one weekend each month.... Kelly DeWall may visit during the weekends when his parents are granted visitation if they supervise the visitation."

[¶ 11] Lynn filed a "Motion for Termination of Grandparental Visitation and Request for Permission to Locate Out of State" in September 1998. Despite the title of her motion, in her brief in support of the motions Lynn stated "[a]lthough relocating to Arizona will affect the grandparents' visitations with [D.C.], alternative visitations can be arranged, perhaps for a longer period during the summer." Tom and Lynn Love stated in their affidavit: "We do not want to interfere [with] the relationship between [D.C.] and his grandparents, Ted and Dorothy DeWall, or his father Kelly DeWall. Any visitation can be arranged as possible and as agreed upon between the parties. We will be more than reasonable in attempting to arrange visitation." After conducting numerous interviews, the court-appointed GAL filed his report and recommendations with the trial court in which he reported:

I had two telephone conversations with Lynn Love, and I interviewed Lynn Love in my office. Lynn told me that it was not her intent to terminate the rights of Ted and Dorothy DeWall to visit [D.C.]. She stated she had no objection to continued grandparental visitation; however, she did say that she was requesting permission to move out of state. Lynn agreed that some form of extended summer visitation should be offered. Lynn agreed to two weeks of summer visitation with the DeWalls being responsible for all expenses incurred in regard to the visitation.

I had a telephone conversation with Lynn's attorney, Theresa Zimmerman, who confirmed that Lynn did not want to terminate the grandparents' right to visitation, but only wants permission to move out of state so that both she and her husband Tom can find employment.....

Initially the DeWalls agreed that if the Court granted Lynn permission to move to Arizona, that one month of extended visitation during the summer would be acceptable. However, Mrs. DeWall called back and said that they would need more time. Otherwise their visitation with [D.C.] would consist [ ] primarily of transporting him back and forth to Arizona. Mrs. DeWall also requested that Lynn be responsible for providing at least one half of the transportation.

. . . .

If Lynn Love were granted permission to move to Phoenix, it is doubtful that Kelly DeWall or the DeWall grandparents would be able to visit [D.C.] in Phoenix. The only feasible visitation would be extended summer visitation.

. . . .

1. I recommend that Lynn Love be granted permission to relocate.

2. Ted and Dorothy DeWall be granted a minimum of one month extended visitation during the summer with [D.C.].

3. That Ted and Dorothy DeWall and Kelly DeWall be permitted and encouraged to send letters and cards to [D.C.].

[¶ 12] After reviewing the GAL's detailed report and recommendations, the trial court decided it was in D.C.'s best interest to grant Lynn's request to move to Arizona and ordered:

Ted and Dorothy will be allowed to have [D.C.] stay with them for at least five days during the Christmas school holiday. If the parties cannot cooperate to facilitate this visitation, the Court will have to reconsider its decision concerning relocation.

Ted and Dorothy will be allowed to have visitation with the child and supervise visitation with Kelly during July each year. They may pick him up where ever Love resides on July 1. The expenses involved in picking him up and transporting him to their home will be the responsibility of the DeWalls. Love may pick the child up on August 1 at the DeWall residence. The expenses involved in picking him up and returning him to Love's home will be Love's responsibility.

Ted, Dorothy and Kelly DeWall are permitted and encouraged to send letters and cards, and Love is required to permit weekly telephone contact from Ted and Dorothy DeWall and Kelly DeWall. Love is required to keep Ted and Dorothy DeWall and Kelly DeWall advised of her address and telephone number and must provide monthly reports which include samples of the child's school work, photos, copies of report cards and other medical and social information about the child.

The Court is granting permission to relocate only on the condition the visitation and other contacts will be maintained. The Court will require that Love provide written agreement to comply with the terms of this order before she re-locates.

[¶ 13] Despite her initial assertion that some amount of visitation with the DeWalls would be appropriate, Lynn contends the trial court's visitation order is clearly erroneous because "one month is too long for [D.C.] to be away from his mother and with his paternal grandparents." However, Lynn fails to acknowledge the trial court's order may have been trying to facilitate the visitation between D.C. and Kelly because Kelly's supervised visitation occurs in conjunction with his parents' visitation. Further, considering the distance between North Dakota and Arizona, extended visitation during the summer months is likely the only feasible way to facilitate visitation from the standpoint of economics and transportation. After considering the recommendations of the GAL, the DeWalls' psychological and biological relationship with D.C., and the trial judge's experience with the parties for over four years, we conclude the trial court's decision to award the DeWalls visitation with D.C. during the month of July each year is not clearly erroneous.

### III.

[¶ 14] The trial court ordered that "Love is required to keep Ted and Dorothy DeWall and Kelly DeWall advised of her address and telephone number and must provide monthly reports which include samples of the child's school work, photos, copies of report cards and other medical and social information about the child." Lynn asserts that requirement is clearly erroneous because it is "extremely timely and expensive." In the DeWalls' brief to this court, they agreed the monthly reporting requirements were unnecessary and recommended requiring the reports every three months. During oral argument to this court, the parties stipulated that a report every three months would be acceptable. Because the parties have stipulated to the disposition of this issue, we

do not need to decide whether the reporting requirement is clearly erroneous for the disposition of this appeal.

### IV.

[¶ 15] The trial court order granting Lynn's motion to relocate and specifying visitation rights is affirmed. We direct the trial court to amend the order in compliance with the parties' stipulation to require Lynn to send the DeWalls quarterly, rather than monthly, reports.

[¶ 16] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., and ZANE ANDERSON, D.J., concur.

[¶ 17] ZANE ANDERSON, D.J., sitting in place of SANDSTROM, J., disqualified.