2013 UT App 174

# THE UTAH COURT OF APPEALS

ELLIE JONES AND TRACY JONES,
Petitioners and Appellees,
*v.*
SHARON JONES,
Respondent and Appellant.

Opinion
No. 20110998-CA
Filed July 11, 2013

Third District, Salt Lake Department
The Honorable Judith S.H. Atherton
No. 094904262

Anthony C. Kaye, Angela W. Adams, and
Emily Wegener, Attorneys for Appellant
Bryant J. McConkie, Attorney for Appellees

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE STEPHEN L. ROTH concurred. JUDGE JAMES Z. DAVIS
dissented, with opinion.

VOROS, Judge:

¶1      Sharon Jones (Mother) appeals the trial court's order awarding visitation with Mother's daughter (Child) to Child's paternal grandparents, Ellie and Tracy Jones (Grandparents). Mother claims a fundamental constitutional right in the control of Child and contends that Utah's Grandparent Visitation Statute is not narrowly tailored to serve a compelling state interest as applied to her under the circumstances of this case. We agree and reverse.

BACKGROUND

¶2     Mother married Tracy Jones Jr. (Father) in 2006. Child was born in November 2007, and Mother and Father separated in January 2009. Mother and Father shared equal custody of Child following their separation. Between January and March 2009, Father lived with Grandparents, who helped care for Child while she was in Father's custody. After Father moved out of Grandparents' home, Ellie Jones continued to visit him two to three times a week. Father died in May 2009, when Child was approximately eighteen months old. Mother continued to facilitate contact between Child and Grandparents during the months immediately following Father's death. On July 24, 2009, Grandparents took Child to a baseball game and brought her home after 10:30 p.m. Although Grandparents believed that Mother had agreed for them to bring Child home late, Mother later expressed concern about the late hour.

¶3     Following the baseball game, Mother denied several of Grandparents' requests to spend time with Child and also requested that Grandparents not call Child on weeknights. Grandparents then wrote Mother an email requesting visits with Child two full weekends per month, visits on holidays and birthdays, an extended visit each summer, and two phone calls per week. When Mother did not respond, Grandparents threatened to sue for grandparent visitation. Mother then responded with an email outlining concerns she had about permitting Child to continue visiting Grandparents and informing them that she intended to limit their contact with Child to one phone call per month and one visit every other month for a few hours in the presence of Mother or one of Mother's family members. Grandparents responded that they would not submit to being supervised and that they intended to initiate court proceedings.

¶4     On September 24, 2009, Grandparents filed a Verified Petition to Establish Grandparent Visitation Rights pursuant to the Grandparent Visitation Statute, *see* Utah Code Ann. § 30-5-2

(LexisNexis 2007), requesting visitation comparable to that afforded to noncustodial parents under a separate statutory provision, *see id*. § 30-3-35.5(e) (Supp. 2012).[1] Their petition alleged the existence of factors tending to rebut the statutory presumption "that a parent's decision with regard to grandparent visitation is in the grandchild's best interests" (the parental presumption). *See id.* § 30-5-2(2) (2007); *see also Troxel v. Granville*, 530 U.S. 57, 68, 70 (2000) (plurality opinion) (holding that due process requires that a fit parent's decision regarding grandparent visitation be given "special weight").

¶5    Grandparents did not see Child again until July 2011, when they saw her as part of a Grandparent Time Evaluation. By that time, Child was approximately three and a half years old. At the evaluation, Child "exhibited no distress being with [Grandparents]; recognized them; played board games and sang a song; and called Grandparents 'Nana and Papa.'" The evaluator "concluded that [Grandparents] were appropriate, fit, and proper to have visitation with [Child]." She recommended that Grandparents be awarded phone calls with Child and visitation one day per month, starting with three hours per visit and gradually increasing to overnight visits as Child gets older.

¶6    A trial was held on October 12 and 13, 2011. The trial court issued its Findings of Fact and Conclusions of Law on December 21, 2011, in which it considered the statutory factors and concluded that Grandparents had rebutted the parental presumption by clear and convincing evidence. Specifically, it concluded that Grandparents were "fit and proper persons to have visitation with [Child]," that "[v]isitation with [Child] was denied and unreasonably limited" by Mother, that Grandparents "had a substantial relationship with [Child] until the denial of visitation and the denial has likely caused harm to [Child]," that Father had

---

[1]In the course of the proceedings, Grandparents' request for visitation was dramatically reduced from their initial request.

died, and that "[v]isitation is in the best interest of [Child]." As a result of its findings, the trial court ordered grandparent visitation amounting to approximately thirty-six hours per month. Mother appeals.

## ISSUE AND STANDARD OF REVIEW

¶7    The central issue on appeal is Mother's challenge to the constitutionality of the Grandparent Visitation Statute, as applied under the circumstances of this case. "Constitutional challenges to statutes present questions of law, which we review for correctness." *State v. Green*, 2004 UT 76, ¶ 42, 99 P.3d 820 (citation and internal quotation marks omitted). Nevertheless, "legislative enactments are presumed to be constitutional, and those who challenge a statute or ordinance as unconstitutional bear the burden of demonstrating its unconstitutionality." *Id.* (citation and internal quotation marks omitted).

## ANALYSIS

As Applied to Mother, the Grandparent Visitation Statute Is Not Narrowly Tailored To Serve a Compelling State Interest.

¶8    The Grandparent Visitation Statute allows a grandparent to petition the court for grandparent–grandchild visitation over the objection of the grandchild's parents. The statute acknowledges "a rebuttable presumption that a parent's decision with regard to grandparent visitation is in the grandchild's best interests." Utah Code Ann. § 30-5-2(2). However, the statute allows the court to override the parent's decision when the parental presumption has been rebutted. *Id.* The statute identifies several factors relevant to this analysis:

> [T]he court may override the parent's decision and grant the petitioner reasonable rights of visitation if the court finds that the petitioner has rebutted the presumption based upon factors which the court considers to be relevant, such as whether:
>
> > (a) the petitioner is a fit and proper person to have visitation with the grandchild;
> > (b) visitation with the grandchild has been denied or unreasonably limited;
> > (c) the parent is unfit or incompetent;
> > (d) the petitioner has acted as the grandchild's custodian or caregiver, or otherwise has had a substantial relationship with the grandchild, and the loss or cessation of that relationship is likely to cause harm to the grandchild;
> > (e) the petitioner's child, who is a parent of the grandchild, has died, or has become a noncustodial parent through divorce or legal separation;
> > (f) the petitioner's child, who is a parent of the grandchild, has been missing for an extended period of time; or
> > (g) visitation is in the best interest of the grandchild.

*Id.* Grandparents seeking court-ordered visitation must overcome the parental presumption by clear and convincing evidence. *Uzelac v. Thurgood* (*In re Estate of S.T.T.*), 2006 UT 46, ¶ 28, 144 P.3d 1083.

A.     Because a Parent's Right Is Fundamental, Strict Scrutiny Applies.

¶9     Mother contends on appeal that any intrusion into a parent's constitutional liberty interest must be narrowly tailored to achieve a compelling state interest. She argues that "constitutional law requires a compelling state interest before visitation may be

ordered, and no fact findings or trial evidence identify a compelling interest here." We agree.

¶10    "[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion) (citing *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923)). Parents have a fundamental right "to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Parham v. J.R.*, 442 U.S. 584, 602 (1979); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)).

¶11    The Utah Constitution similarly protects this fundamental right. "In a long line of precedent, [the Utah Supreme Court] has recognized parental rights as a fundamental component of liberty protected by article I, section 7 [of the Utah Constitution]." *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 72, 250 P.3d 465 (citing *Mill v. Brown*, 88 P. 609, 613 (Utah 1907)). Indeed, as our Legislature recently recognized, "[t]he right of a fit, competent parent to raise the parent's child without undue government interference is a fundamental liberty interest that has long been protected by the laws and Constitution of this state and of the United States, and is a fundamental public policy of this state." Utah Code Ann. § 78A-6-503(9) & amend. notes (LexisNexis 2012). "[A]lthough 'fundamental,' parental rights are not absolute. A parent's rights must be balanced against the state's important interest in protecting children from harm." *Jensen*, 2011 UT 17, ¶ 74 (citations omitted).

¶12    In contrast, "[h]istorically, grandparents had no legal right of visitation." *Campbell v. Campbell*, 896 P.2d 635, 642 n.15 (Utah Ct.

App. 1995) (citing Laurence C. Nolan, *Honor Thy Father and Thy Mother: But Court-Ordered Grandparent Visitation in the Intact Family?*, 8 BYU J. Pub. L. 51, 57 (1993)). "It is a fundamental tenet of our common law that 'the only persons having any actually vested interest in the custody of a child cognizable by the law are the parents.'" *Jones v. Barlow*, 2007 UT 20, ¶ 39, 154 P.3d 808 (quoting *Wilson v. Family Servs. Div.*, 554 P.2d 227, 229 (Utah 1976) (adjudicating the interest of a grandmother)). "Other relatives of a child merely have 'some dormant or inchoate right or interest in the custody and welfare of children' that matures only upon the death or termination of the rights of the parents." *Id.* (quoting *Wilson*, 554 P.2d at 230–31). Accordingly, the legal interests of grandparents are typically protected by a state statute similar to the one before us. Such statutes inevitably raise the question of the extent to which the state may impinge upon the parent's fundamental right to control of her child for the purpose of vindicating a grandparent's "dormant or inchoate right or interest in the custody or welfare of children." *Id.* (citation and internal quotation marks omitted).

¶13     The question before us is what level of scrutiny to apply in reviewing a statute that to some degree circumscribes a parent's fundamental right to decide questions involving the care, custody, and control of her child. Ordinarily, "the [federal] Due Process Clause prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest." *Lawrence v. Texas*, 539 U.S. 558, 593 (2003) (emphasis omitted). Similarly, our supreme court has stated that under the Due Process Clause of the Utah Constitution, a "statute that infringes upon [a parent's] 'fundamental' right is subject to heightened scrutiny and is unconstitutional unless it (1) furthers a compelling state interest and (2) 'the means adopted are narrowly tailored to achieve the basic statutory purpose.'" *Jensen*, 2011 UT 17, ¶ 72 (quoting *Wells v. Children's Aid Soc'y of Utah*, 681 P.2d 199, 206 (Utah 1984)).

¶14     However, in ruling on the constitutionality of grandparent visitation statutes, neither high court has stated that heightened scrutiny applies. In *Troxel v. Granville*, the Supreme Court invalidated the application of a grandparent visitation statute on the ground that it unconstitutionally infringed on the parent's fundamental right. 530 U.S. 57, 73 (2000) (plurality opinion).[2] A plurality of the Court stated that the "breathtakingly broad" statute involved in that case effectively allowed a judge to "disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." *Id.* at 67. Justice Thomas concurred in the judgment, advocating the strict scrutiny standard and stating that it was not satisfied. *See id.* at 80 (Thomas, J., concurring in the judgment). Despite Justice Thomas's chiding, the plurality declared the statute unconstitutional as applied to that case without identifying the applicable level of scrutiny.

¶15     In *Uzelac v. Thurgood*, our supreme court upheld the Grandparent Visitation Statute against a federal constitutional challenge. *See Uzelac v. Thurgood* (*In re Estate of S.T.T.*), 2006 UT 46, ¶¶ 1–2, 144 P.3d 1083. The court compared Utah's statute to the statute held unconstitutional in *Troxel*. *See id.* ¶¶ 19–36. The court concluded that Utah's statute avoided the errors identified in *Troxel* and thus was "not unconstitutional under *Troxel*" either facially or as applied. *See id.* ¶¶ 35, 38. The court further addressed the "standard of proof by which the parental presumption must be rebutted," concluding that "a clear and convincing standard of proof should apply to satisfy due process requirements." *Id.* ¶ 28 (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982) ("We hold that such a standard adequately conveys to the factfinder the level of

---

[2]For a chart analyzing the six splintered opinions in *Troxel*, see Tracy C. Schofield, Comment, *All the Better to Eat You With, My Dear: The Need for a Heightened Harm Standard in Utah's Grandparent Visitation Statute*, 2006 BYU L. Rev. 1669, 1699.

subjective certainty about his factual conclusions necessary to satisfy due process.")).

¶16    But the clear and convincing standard is a standard of evidentiary proof, not a level of constitutional scrutiny. It is one thing to require that "factors which the court considers to be relevant" to grandparent visitation, "such as" those listed in section 30-5-2(2), must be found by clear and convincing evidence. *See* Utah Code Ann. § 30-5-2(2) (LexisNexis 2007); *Uzelac*, 2006 UT 46, ¶ 28. It is quite another to determine that the existence of some combination of those factors justifies the state's interference with a parent's control of her child—although the court obviously made that determination in *Uzelac*.

¶17    *Santosky v. Kramer*, from which our supreme court drew the clear and convincing standard, is instructive. *See* 455 U.S. 745 (1982). At issue in that case was a New York statute permitting the state to terminate the rights of parents in a child upon a finding that the child was "permanently neglected." *See id.* at 747. The statute required only that "a fair preponderance of the evidence support that finding. Thus, in New York, the factual certainty required to extinguish the parent-child relationship [was] no greater than that necessary to award money damages in an ordinary civil action." *Id.* (citation and internal quotation marks omitted). In other words, at issue in *Santosky* was not whether the State of New York had a compelling interest in rescuing permanently neglected children—the parties and the Court apparently assumed it did—but what level of proof was required to establish neglect. *Santosky* did not address the question of the appropriate level of constitutional scrutiny.

¶18    Since *Troxel*, several state courts have reviewed the constitutionality of their respective grandparent visitation statutes without considering the level of scrutiny to apply. *See Moriarty v. Bradt*, 827 A.2d 203, 218–19 (N.J. 2003) (collecting cases). Instead, they have "simply compared the structure of their statutes to the one invalidated in *Troxel* to assess constitutionality." *Id.* at 219; *see*

*also, e.g., Williams v. Williams*, 2002-NMCA-074, ¶¶ 10–29, 50 P.3d 194. Similarly, our supreme court in *Uzelac* addressed whether the statute was constitutional "under *Troxel*." *See* 2006 UT 46, ¶ 35. It did not address the level of constitutional scrutiny applicable to the Grandparent Visitation Statute, presumably because under any level of scrutiny, the court would not have held the statute unconstitutional facially or as applied to the facts of that case.

¶19     Notwithstanding Mother's extensive appellate briefing of the appropriate level of scrutiny, Grandparents do not squarely address the argument. They simply respond that *Uzelac* settled the constitutionality of the Grandparent Visitation Statute, and that even if strict scrutiny applied, that standard is met here.

¶20     However, *Uzelac*'s declaration that the Grandparent Visitation Statute is constitutional on its face does not dispose of Mother's challenge to the statute as applied to her. Furthermore, unlike *Troxel* and *Uzelac*, this case does not fall comfortably on either end of the constitutional spectrum. Thus, to address Mother's constitutional challenge, we must decide the appropriate level of scrutiny to apply.

¶21     As Mother notes, the majority of state courts to address the issue have held that grandparent visitation laws are subject to strict scrutiny. *See, e.g., Ex parte E.R.G.*, 73 So. 3d 634, 645–46 (Ala. 2011) (plurality opinion); *id.* at 662 (Murdock, J., concurring specially); *Linder v. Linder*, 72 S.W.3d 841, 855 (Ark. 2002); *Roth v. Weston*, 789 A.2d 431, 441 (Conn. 2002); *Doe v. Doe*, 172 P.3d 1067, 1079 (Haw. 2007); *Lulay v. Lulay*, 739 N.E.2d 521, 532 (Ill. 2000); *Rideout v. Riendeau*, 2000 ME 198, ¶ 19, 761 A.2d 291 (plurality opinion); *id.* ¶¶ 47, 51 (Alexander, J., dissenting); *Koshko v. Haining*, 921 A.2d 171, 187–91 (Md. 2007); *SooHoo v. Johnson*, 731 N.W.2d 815, 821 (Minn. 2007); *Moriarty*, 827 A.2d at 222; *In re Herbst*, 1998 OK 100, ¶ 14, 971 P.2d 395; *Hiller v. Fausey,* 904 A.2d 875, 885–86 (Pa. 2006); *Smallwood v. Mann*, 205 S.W.3d 358, 362–63 (Tenn. 2006); *In re Parentage of C.A.M.A.*, 109 P.3d 405, 408–09, ¶¶ 9–13 (Wash. 2005) (en banc); *see also Von Eiff v. Azicri*, 720 So. 2d 510, 514 (Fla. 1998)

(applying state constitution); *Santi v. Santi*, 633 N.W.2d 312, 318 (Iowa 2001) (same). *But see, e.g.*, *Crafton v. Gibson*, 752 N.E.2d 78, 90–92 (Ind. Ct. App. 2001) (applying rational basis review because the state's grandparent visitation statute did not significantly interfere with parents' fundamental rights); *Herndon v. Tuhey*, 857 S.W.2d 203, 208–10 (Mo. 1993) (en banc) (same).

¶22    Our supreme court has held that under the Utah Constitution, "the proponent of legislation infringing parental rights must show (1) a compelling state interest in the result to be achieved and (2) that the means adopted are narrowly tailored to achieve the basic statutory purpose." *Wells v. Children's Aid Soc'y of Utah*, 681 P.2d 199, 206 (Utah 1984) (citation and internal quotation marks omitted). This holding has never been applied in the context of grandparent visitation. It is true that in *Campbell v. Campbell*, in examining a federal constitutional challenge to the predecessor of our current Grandparent Visitation Statute, we refused to "apply strict scrutiny to determine the statute's constitutionality" and instead held "the statute to be constitutional because it is rationally related to furthering a legitimate state interest." 896 P.2d 635, 644 (Utah Ct. App. 1995). *Campbell* held that rational basis review was appropriate because the statute in effect at the time did not "substantially infringe upon the parent's fundamental rights or the autonomy of the nuclear family." *Id.* at 642.

¶23    But *Campbell*'s holding on this point was effectively overruled by *Troxel*. Although *Troxel* did not address the standard of review, the fundamental nature of the parental right in question and the significant impact a grandparent visitation statute has on a fit parent's rights both appear as strong undercurrents running throughout the *Troxel* plurality's decision that the statute "unconstitutionally infringe[d] on that fundamental parental right." *See Troxel v. Granville*, 530 U.S. 57, 67 (2000) (plurality opinion); *see also id.* at 101 (Kennedy, J., dissenting) ("[A] domestic relations proceeding in and of itself can constitute state intervention that is so disruptive of the parent-child relationship

that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated.").

¶24    The Grandparent Visitation Statute qualifies as "legislation infringing parental rights" in a substantial, not merely incidental, way, because it allows the state to override a parent's decision regarding the care, custody, and control of her child. *See Wells*, 681 P.2d at 206; *see also Washington v. Glucksberg*, 521 U.S. 702, 767 n.8 (1997) (Souter, J., concurring in the judgment) (noting that "not every law that incidentally makes it somewhat harder to exercise a fundamental liberty must be justified by a compelling counterinterest," but only those laws that substantially infringe on a fundamental liberty interest); *Koshko v. Haining*, 921 A.2d 171, 187–91 (Md. 2007) (holding that the state's grandparent visitation statute infringed on a fundamental right in a direct and substantial way). Furthermore, as noted above, the application of strict scrutiny is consistent with the majority of other jurisdictions to address the issue under the federal constitution. We agree with the reasoning of those cases and thus conclude that strict scrutiny review applies to Mother's claim that the statute, as applied, violated her rights under the Utah and United States Constitutions.

B.    The Statute As Applied to the Facts of This Case Does Not Withstand Strict Scrutiny.

¶25    As noted above, a "statute that infringes upon [a parent's] 'fundamental' right is subject to heightened scrutiny and is unconstitutional unless it (1) furthers a compelling state interest and (2) 'the means adopted are narrowly tailored to achieve the basic statutory purpose.'" *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 72, 250 P.3d 465 (quoting *Wells*, 681 P.2d at 206). The Grandparent Visitation Statute as applied to the facts of this case satisfies neither element of this test.

¶26    Here, Grandparents have not demonstrated that the state's interest in ordering visitation is compelling. The classic justification for state intervention in the parent–child relationship is to protect

"a child who is an abused child, neglected child, or dependent child," *see* Utah Code Ann. § 78A-6-103(3) (LexisNexis 2012). And where the parent–child bond is to be severed altogether, the parent "is entitled to a showing of unfitness, abandonment, or substantial neglect before her parental rights are terminated." *In re J.P.*, 648 P.2d 1364, 1377 (Utah 1982).

¶27    In the context of grandparent visitation, many states hold that a compelling state interest is established only where denial of visitation would significantly harm the grandchild. *See, e.g., Roth v. Weston*, 789 A.2d 431, 445 (Conn. 2002) ("Without having established substantial, emotional ties to the child, a petitioning party could never prove that serious harm would result to the child should visitation be denied. This is as opposed to the situation in which visitation with a third party would be in the best interests of the child or would be very beneficial. The level of harm that would result from denial of visitation in such a situation is not of the magnitude that constitutionally could justify overruling a fit parent's visitation decision."); *Beagle v. Beagle*, 678 So. 2d 1271, 1276 (Fla. 1996) (concluding, under the privacy clause of the Florida Constitution, that the state has a compelling interest in ordering grandparent visitation over the wishes of a fit parent only "when it acts to prevent demonstrable harm to the child"); *Brooks v. Parkerson*, 454 S.E.2d 769, 772–74 (Ga. 1995) (holding that under state and federal constitutional law, "state interference with parental rights to custody and control of children is permissible only where the health or welfare of a child is threatened"); *Doe v. Doe*, 172 P.3d 1067, 1079–80 (Haw. 2007) ("[P]roper recognition of parental autonomy in child-rearing decisions requires that the party petitioning for visitation demonstrate that the child will suffer significant harm in the absence of visitation before the family court may consider what degree of visitation is in the child's best interests."); *In re Marriage of Howard*, 661 N.W.2d 183, 191 (Iowa 2003) ("If grandparent visitation is to be compelled by the state, there must be a showing of harm to the child beyond that derived from the loss of the helpful, beneficial influence of grandparents."); *Moriarty v. Bradt*, 827 A.2d 203, 222 (N.J. 2003) ("Our prior

jurisprudence establishes clearly that the only state interest warranting the invocation of the State's *parens patriae* jurisdiction to overcome the presumption in favor of a parent's decision and to force grandparent visitation over the wishes of a fit parent is the avoidance of harm to the child. . . . Although *Troxel* avoided confronting that issue directly, we are satisfied that prior United States Supreme Court decisions fully support our conclusion that interference with parental autonomy will be tolerated only to avoid harm to the health or welfare of a child."); *In re Herbst*, 1998 OK 100, ¶ 16, 971 P.2d 395 ("[A] vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see a child."); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993) (holding that, under the state constitution's right to privacy, "when no substantial harm threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit"); *In re Parentage of C.A.M.A.*, 109 P.3d 405, 413, ¶ 29 (Wash. 2005) (en banc) (concluding that "the application of the 'best interests of the child' standard rather than a 'harm to the child' standard is unconstitutional" under the Washington case that was affirmed on narrower grounds by *Troxel*); *see also* Tracy C. Schofield, Comment, *All the Better to Eat You With, My Dear: The Need for a Heightened Harm Standard in Utah's Grandparent Visitation Statute*, 2006 BYU L. Rev. 1669, 1734 (advocating an amendment to the Utah Grandparent Visitation Statute to require grandparents to show "that a parent is unfit and that his or her visitation decision will substantially harm the children"). *But see, e.g.*, *Rideout v. Riendeau*, 2000 ME 198, ¶ 23, 761 A.2d 291 ("An element of 'harm' in the traditional sense is not, however, the only compelling state interest extant when matters relating to the welfare of children are under scrutiny."); *Hiller v. Fausey*, 904 A.2d 875, 886–90 (Pa. 2006) (concluding that a harm requirement "would set the bar too high," but that the state has a compelling interest in "protecting the health and emotional welfare of children" and that the state's statute was

narrowly tailored because it extended visitation rights only to grandparents whose child had died, afforded special weight to a parent's decision regarding visitation, required the court to consider the strength of the grandparent–grandchild relationship, and required findings that visitation would not interfere with the parent–child relationship and that visitation would serve the best interests of the grandchild).

¶28   On the other hand, some states appear to interpret *Troxel* as requiring the conclusion that a showing of harm is unnecessary. *See, e.g.*, *In re Adoption of C.A.*, 137 P.3d 318, 325–26 (Colo. 2006) (en banc). However, this interpretation does not square with *Troxel* and is inconsistent with our supreme court's reading of *Troxel*. Rather than ruling that a showing of harm is not required, "the plurality [in *Troxel*] specifically refused to determine whether the Due Process Clause requires a showing of harm or potential harm to the child as a condition precedent to granting visitation." *Uzelac v. Thurgood (In re Estate of S.T.T.)*, 2006 UT 46, ¶ 24, 144 P.3d 1083 (citing *Troxel v. Granville*, 530 U.S. 57, 73 (2000) (plurality opinion)). Indeed, other courts have found that a statutory scheme can meet the requirements of *Troxel* but nonetheless fail a strict scrutiny analysis absent a showing of harm. *See, e.g.*, *Doe*, 172 P.3d at 1077, 1080.

¶29   Our Grandparent Visitation Statute does not require a showing of harm to the grandchild. Rather, harm to the grandchild caused by termination of a substantial relationship with the grandparent is listed as one of seven factors the court may "consider[] to be relevant" in determining whether the grandparent has rebutted the presumption that "a parent's decision with regard to grandparent visitation is in the grandchild's best interest":

> (d) the petitioner has acted as the grandchild's custodian or caregiver, or otherwise has had a substantial relationship with the grandchild, and the *loss or cessation of that relationship is likely to cause harm* to the grandchild . . . .

Utah Code Ann. § 30-5-2(2)(d) (LexisNexis 2007) (emphasis added). Moreover, as our supreme court observed in *Uzelac*, the statute "does not provide a district court with much guidance regarding how the factors ought to be weighed or applied." 2006 UT 46, ¶ 36 n.7.

¶30    Here, Mother contends that although the trial court ruled that denial of visitation "has likely" harmed Child, the court "made no fact findings in support of that conclusion, for the record was barren of any such evidence." Indeed, the grandparent visitation evaluation contains no reference to harm suffered by Child. Although the evaluator did testify that Child might someday benefit from knowing her paternal grandparents in order to grieve her father's death and deal with inevitable questions about her past, this prediction is speculative and in any event merely states the rationale for statutory factor (e), the death of a parent. *See* Utah Code Ann. § 30-5-2(2)(e).

¶31    In response, Grandparents assert that they had acted as Child's custodian or caregiver and enjoyed a substantial relationship with Child. And although they assert that "harm has and will result if visitation is denied," they point to no record evidence supporting that assertion. The expert testimony they cite suggests only that harm would likely result in this type of situation. The evaluator stated that she lacked sufficient information to determine whether harm had actually resulted to Child. Furthermore, the record evidence describes a healthy and normal grandparent–grandchild relationship, but not an exceptionally close one.[3] For example, the court found that in the meeting the evaluator hosted between Grandparents and Child, Child "exhibited no distress" and—tellingly—"recognized them."

---

[3]The strength of the relationship was affected, no doubt, by Mother's restriction of Grandparents' contact with Child prior to the Grandparent Time Evaluation.

¶32    Grandparents maintain that harm may be inferred from the fact that Mother abruptly ended visitation two years before trial, and the trial court's findings to this effect are uncontested. But the only harm identified by Grandparents or by the trial court is loss of the grandparent–grandchild relationship itself—a circumstance inherent in every case likely to be brought under the statute—and even at that, the testimony of harm to Child is speculative. In sum, the evidence that Grandparents had a substantial relationship with Child and that Child would be harmed by denied visitation was not compelling.

¶33    Other statutory factors are either unchallenged here or supported by clear and convincing evidence: Father died, Grandparents and Mother are fit, Mother unreasonably limited Grandparents' visitation, and visitation is in Child's best interest.[4] Consequently, the only factor distinguishing this case from any other parent–grandparent visitation litigation between fit parties is the fact that Father is deceased. Indeed, the present record does not even demonstrate Child's "understandable sadness resulting from losing a family member and . . . missing [her] grandparents" found insufficient in *In re Scheller*, 325 S.W.3d 640, 644 (Tex. 2010) (applying a statute that was amended after *Troxel* to require grandparents to rebut the parental presumption "by proving that denial . . . of access to the child would significantly impair the child's physical health or emotional well-being" (citation and internal quotation marks omitted)). No one in this case has claimed that, without more, Father's death justifies compelled visitation under any standard, much less the compelling state interest standard. We therefore conclude that the facts of this case are not "sufficient . . . to justify state interference." *See Uzelac v. Thurgood* (*In re Estate of S.T.T.*), 2006 UT 46, ¶ 38, 144 P.3d 1083.

---

[4]We understand the statutory term "unreasonably limited" to mean that the limitation on visitation seems disproportional to the reasons offered for it. *See* Utah Code Ann. § 30-5-2(2)(b) (LexisNexis 2007).

¶34 Even if Grandparents had demonstrated that the state's interest in requiring visitation here was compelling, they have not shown that the visitation ordered in this case was narrowly tailored to achieve that interest. Where a statute infringes on a fundamental right, the means adopted must be "narrowly tailored to achieve the basic statutory purpose." *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 72, 250 P.3d 465 (citation and internal quotation marks omitted).

¶35 As of June 2012, Grandparents are entitled under the trial court's order to visitation on alternating weekends, one of which is an overnight visit. This level of visitation is well below the minimum statutory schedule for a parent. *See* Utah Code Ann. § 30-3-35 (LexisNexis Supp. 2012); *id.* § 30-3-35.5(3)(f). But it is more substantial than the visitation many grandparents enjoy, especially those who, like Grandparents here, live in a different city from their grandchild.

CONCLUSION

¶36 In sum, we conclude that the Grandparent Visitation Statute is unconstitutional under the Utah and United States Constitutions as applied to Mother in this case. We need not reach any other claims presented in this appeal. The judgment of the trial court is accordingly reversed.

————————

DAVIS, Judge (dissenting):

¶37 I respectfully dissent from the majority opinion because I believe it is inconsistent with our supreme court's holding in *Uzelac v. Thurgood* (*In re Estate of S.T.T.*), 2006 UT 46, 144 P.3d 1083. Accordingly, I would consider Mother's other arguments on appeal and ultimately affirm the trial court's award of grandparent visitation.

### I. Constitutionality of the Grandparent Visitation Statute

¶38   The *Uzelac* court explained that the Grandparent Visitation Statute is constitutional as applied where "the grandparents . . . have clearly and convincingly rebutted the [parental] presumption . . . [,] the district court . . . [has] found that grandparent visitation [is] in the child's best interests," and the trial court's "determination [is] accompanied by sufficient findings of fact to justify state interference." *Id.* ¶ 38. Although the *Uzelac* court never explicitly discussed the appropriate level of scrutiny to apply in grandparent visitation cases, it is clear from the parties' briefs in that case that the scrutiny issue was raised and that the supreme court would have been cognizant of it. Brief for Appellee at 26–27, *Uzelac*, 2006 UT 46 (No. 20040796); Reply Brief for Appellant at 5–13, *Uzelac*, 2006 UT 46 (No. 20040796). Thus, it appears that, like the Supreme Court in *Troxel*, our supreme court consciously declined to explicitly identify the appropriate level of scrutiny. *See Troxel v. Granville*, 530 U.S. 57, 80 (2000) (Thomas, J., concurring in the judgment).

¶39   The *Uzelac* court did examine the Grandparent Visitation Statute in detail and gave extensive instructions regarding how it should be constitutionally applied. For example, the court explicitly limited the applicability of two particular factors—grandparent fitness and best interests—because of their tendency to "allow[] a judge to supercede a parent's decisions based solely on a disagreement between the parent and the judge." *Uzelac*, 2006 UT 46, ¶ 33. The court further clarified that in order to withstand constitutional scrutiny, the parental presumption must be rebutted by clear and convincing evidence. *Id.* However, the court went on to explain that the statute provides "several means by which a grandparent can rebut the parental presumption" and explained that the Grandparent Visitation Statute withstood constitutional scrutiny by "ensuring that courts give 'special weight' to the decisions of fit parents." *Id.* ¶¶ 34–35. Although the *Uzelac* court suggested that "the presumption is most clearly rebutted when the court finds the existence of several relevant factors," it did not

identify any particular number of factors that must be established and made no suggestion that harm or parental fitness should be elevated over any of the other factors.[5] *Id.* ¶ 34; *see also id.* ¶ 24 (pointing out that *Troxel*'s "plurality decision does not impose the requirement that the parental presumption be rebutted by a showing of harm to the child" and "specifically refused to determine whether the Due Process Clause requires a showing of harm or potential harm to the child as a condition precedent to granting visitation" (citing *Troxel*, 530 U.S. at 73 (plurality opinion))).

¶40    Thus, even if we assume our supreme court did not, in effect, apply strict scrutiny, I do not believe we should employ a higher level of scrutiny than that employed by our supreme court or read additional constitutional requirements into a statute that our supreme court has thoroughly analyzed.[6] Thus, I would

---

[5]A harm requirement would make it nearly impossible for grandparents of very young grandchildren with fit parents to obtain an award of grandparent visitation. While the legislature might very well deem it appropriate to impose such a limitation, I do not think due process mandates that the state's interest in preserving a child's relationship with both sides of her family where the family unit has been divided be limited to circumstances where the child is old enough to have suffered severe emotional harm at the severing of that relationship.

[6]While the *Uzelac* court did not explicitly employ strict scrutiny in its analysis, it certainly appears to have employed something greater than rational basis scrutiny in its evaluation of the Grandparent Visitation Statute. The majority observes that a number of other courts have concluded "that a compelling state interest is established only where denial of visitation would significantly harm the grandchild." *See supra* ¶ 27. However, the *Uzelac* court's analysis strongly suggests that another state interest may justify an award of grandparent visitation, i.e.,

(continued...)

conclude that by determining that Grandparents had clearly and convincingly rebutted the parental presumption by means of a sufficient combination of the statutory factors, the trial court applied the Grandparent Visitation Statute in a manner that adequately protected Mother's constitutional parental rights. Accordingly, I would address Mother's other arguments on appeal.

## II. Factual Findings

¶41     Mother first challenges several of the trial court's factual findings. A trial court's findings of fact are reviewed for clear error. *Houskeeper v. State*, 2008 UT 78, ¶ 18, 197 P.3d 636. Specifically, Mother maintains that there was insufficient evidence to support the court's findings that Mother "believed the visits [with Grandparents] went well" during the two and a half months following Father's death; that Mother "denied any unsupervised visitation and contact" after July 24, 2009; that Mother "testified

---

[6](...continued)
preserving the child's right to a relationship with both sides of her family where that "family has been divided by some turn of fate—death, divorce, loss of custody, a missing person, or a declaration that a parent is unfit or incompetent." *Uzelac v. Thurgood (In re Estate of S.T.T.)*, 2006 UT 46, ¶ 30, 144 P.3d 1083; *see also discussion infra* ¶ 53. The court took no issue with the legislature's identification of such circumstances as factors tending to rebut the parental presumption and took pains to explain why that category of factors furthered a state interest. *See Uzelac*, 2006 UT 46, ¶ 30. I do not know whether the supreme court intended by this discussion to suggest that preserving a child's bonds with both sides of her family is a compelling state interest or whether it reached this conclusion by employing an intermediate level of scrutiny rather than strict scrutiny. However, it appears to me that the supreme court's discussion approved this state interest as constitutionally sufficient to justify an award of grandparent visitation, under appropriate circumstances, even in the absence of significant harm.

that she denied visitation only after [Grandparents] wanted too much"; and that "[f]inancial matters and [Child's maternal grandmother's] involvement may have contributed to the cessation of contact between [Grandparents] and [Child]." I do not agree with Mother that these findings were unsupported by the evidence.

¶42   Mother asserts that because her relationship with Grandparents was not ideal during the two and a half months immediately following Father's death, the trial court erred in finding that Mother believed the visits with Grandparents went well during that period. However, read in context, that finding appears to relate primarily to Mother's feelings about the visits themselves, i.e., Grandparents' ability to care for Child and Child's relationship with Grandparents, rather than Mother's personal feelings toward Grandparents. Her feelings about the visits were related in email communications between Mother and Grandparents during the relevant time period. Although Mother expressed concern about allowing Child to stay overnight with Grandparents, she assured them that this was based on the fact that Child had struggled with her bedtime routine rather than a desire to keep Child from Grandparents. Mother expressed her opinion that Child should not "have overnight visits with others until she is at about 3 years old" and suggested that she might reconsider the possibility of overnights in the future. Mother told Grandparents that she was "not trying to keep [Child] from [them] in any way" and that she knew Grandparents loved Child. Though Mother may have expressed concerns about visitation later in the course of litigation, the evidence was sufficient to support the trial court's finding that *during* the period when visitation was occurring, Mother believed the visits went well.

¶43   Although Mother concedes that "the district court could have inferred that [Mother] did not grant [Grandparents'] requests for visits in August and no visits took place after July 2009 . . . ; [Child] did not have weekday telephone calls with [Grandparents] after July 2009 . . . ; and [Mother] requested supervised visitation in September 2009," she takes issue with its finding that she

"denied any unsupervised visitation and contact" after July 2009. While it does appear that at least some weekend phone calls may have taken place after July 2009 and that the lack of visits in August may have been related to scheduling concerns rather than a blanket restriction by Mother (though in September Mother admittedly requested that visits be supervised), I see Mother's objection to this finding as overly punctilious. I see no practical difference between the succinct finding made by the trial court and the more detailed facts identified by Mother; the gist of the facts, no matter how they are related, is that Mother severely restricted Grandparents' visitation with Child beginning soon after July 2009.

¶44 Mother objects to the trial court's finding that she "denied visitation only after [Grandparents] wanted too much" because she maintains that there were other reasons for her decision to restrict Grandparents' visitation. While Mother's email to Grandparents does suggest that there were a number of factors impacting her decision to restrict visitation, it is clear that one of those reasons was Grandparents' request for extensive visitation. It also appears that the email was written directly in response to Grandparents' August 27 email requesting additional time. Furthermore, the evaluator suggested that Grandparents' demands for more time were "linked to [Mother's] decision to cut [off] contact." While the trial court's finding may have oversimplified Mother's reasons, it was not clearly erroneous and is supported by the evidence.

¶45 Finally, Mother objects to the trial court's finding that Mother may have restricted contact due to financial matters and Child's maternal grandmother's involvement. The evidence shows that the maternal grandmother urged Mother to deny overnight visits to Grandparents and that Grandparents and Mother had at least a minor confrontation over an ambulance bill for Father that the maternal grandmother taped to Grandparents' front door. The evaluator also opined that financial issues increased friction between the parties and appeared to have contributed to Mother's decision to restrict contact. Again, while these may not have been the only reasons for Mother's restricting contact, and may even

have been minor factors, the finding that they "may have contributed to the cessation of contact" is not clearly erroneous.

### III. Application of Grandparent Visitation Statute

¶46    Mother next asserts that the trial court erred in determining that Grandparents had rebutted the parental presumption. *See* Utah Code Ann. § 30-5-2(2) (LexisNexis 2007). This is a mixed question of law and fact. *See generally State v. Pena*, 869 P.2d 932, 936 (Utah 1994) (explaining that a mixed question involves "the application of law to fact or, stated more fully the determination of whether a given set of facts comes within the reach of a given rule of law"). Thus, the "trial court's factual findings are reviewed deferentially under the clearly erroneous standard, and its conclusions of law are reviewed for correctness with some discretion given to the application of the legal standards to the underlying factual findings." *State v. Brake*, 2004 UT 95, ¶ 12, 103 P.3d 699 (citations and internal quotation marks omitted).

¶47    As our supreme court noted in *Uzelac v. Thurgood* (*In re Estate of S.T.T.*), 2006 UT 46, 144 P.3d 1083, the structure of the Grandparent Visitation Statute is "confusing" and "provides very little guidance to a district judge trying to resolve a grandparent visitation dispute." *Id.* ¶ 36. The statute provides,

> There is a rebuttable presumption that a parent's decision with regard to grandparent visitation is in the grandchild's best interests. However, the court may override the parent's decision and grant the petitioner reasonable rights of visitation if the court finds that the petitioner has rebutted the presumption based upon factors which the court considers to be relevant, such as whether:
>     (a) the petitioner is a fit and proper person to have visitation with the grandchild;
>     (b) visitation with the grandchild has been denied or unreasonably limited;

> (c) the parent is unfit or incompetent;
>
> (d) the petitioner has acted as the grandchild's custodian or caregiver, or otherwise has had a substantial relationship with the grandchild, and the loss or cessation of that relationship is likely to cause harm to the grandchild;
>
> (e) the petitioner's child, who is a parent of the grandchild, has died, or has become a noncustodial parent through divorce or legal separation;
>
> (f) the petitioner's child, who is a parent of the grandchild, has been missing for an extended period of time; or
>
> (g) visitation is in the best interest of the grandchild.

Utah Code Ann. § 30-5-2(2). Because a parent's decisions regarding grandparent visitation are presumed to be in the child's best interests and a parent's right to make such decisions is a protected liberty interest, grandparents seeking court-ordered visitation must rebut the parental presumption by clear and convincing evidence. *Uzelac*, 2006 UT 46, ¶ 28.

¶48    Mother's analytical approach seems to assume that all of the statutory factors are to be employed as a sort of balancing test, with all the factors being weighed against all the others. Accordingly, her argument relies on factors that do not serve to rebut the parental presumption in this case, such as the fact that she is a fit parent. However, applying the factors in the Grandparent Visitation Statute as a balancing test would be inappropriate because the presumption does not need to be bolstered by the factors in order to remain intact—it persists unless and until Grandparents satisfy their burden to establish that a sufficient combination of the factors, supported by clear and convincing evidence, rebut the parental presumption. If the presumption has been rebutted by clear and convincing evidence, Mother can reestablish it only by undermining the evidence supporting the

factors that rebut the presumption, not by alleging the nonexistence of other factors that Grandparents never relied on.

¶49    In an attempt to clarify the Grandparent Visitation Statute and its application, the *Uzelac* court recognized that the statute actually identifies three separate categories of factors. *Id.* ¶ 29. The first category, which includes factors (c), (e), and (f), relates to special circumstances "where a family has been divided by some turn of fate—death, divorce, loss of custody, a missing person, or a declaration that a parent is unfit or incompetent." *Id.* ¶ 30. The second category, which includes factors (b) and (d), "encompasses situations where the state has an interest in protecting the child from harm." *Id.* ¶ 31. The third category, which includes factors (a) and (g), identifies threshold findings that must be made "even if the petitioner has satisfied other statutory factors." *Id.* ¶ 32. While findings relating to these threshold factors are necessary to an award of custody, they are not sufficient to justify such an award because that "would come too close to allowing a judge to supercede a parent's decisions based solely on a disagreement between the parent and the judge." *Id.* ¶ 33. As to the other factors, the court observed that "the presumption is most clearly rebutted when the court finds the existence of several relevant factors" but that the Grandparent Visitation Statute identifies "several means" by which this may be accomplished. *Id.* ¶ 34.

¶50    The supreme court's analysis makes clear that the various factors may be of different weight and may not all apply in the same way. *See id.* ¶ 36 n.7. Some factors must be established as a threshold in every case in order to satisfy due process, *see id.* ¶¶ 32–33, 36 n.7, and other factors may not be relevant at all under a given set of circumstances.[7] The trial court may even consider additional factors not listed in the Grandparent Visitation Statute.

---

[7]In fact, some may be mutually exclusive. For example, the parent who is a child of a grandparent is unlikely to be both dead and missing, though those factors are listed separately. *See* Utah Code Ann. § 30-5-2(2)(e)–(f) (LexisNexis 2007).

*See* Utah Code Ann. § 30-5-2(2) (providing that the trial court may find the parental presumption rebutted "based upon factors which the court considers to be relevant" and then identifying the specifically enumerated statutory factors as examples of factors that might be relevant). Accordingly, there is no magic number of factors necessary to rebut the parental presumption; rather, the determination of whether the parental presumption has been rebutted is highly fact dependent and must take into account the particular facts and circumstances of the case as a whole. With these parameters in mind, I proceed to discuss the trial court's determination that the facts in this case justified an award of visitation to Grandparents under the Grandparent Visitation Statute.

¶51    Mother's argument focuses largely on her assertion that Child does not have a substantial relationship with Grandparents and that Child has not been harmed by being out of contact with them. Mother asserts that a substantial relationship arises only where the grandparents have a relationship with the child akin to that of a "custodian or caregiver," *see* Utah Code Ann. § 30-5-2(2)(d) (LexisNexis 2007), and that Grandparents' relationship with Child does not satisfy that standard. She further points out that neither the evaluator nor the trial court made any specific findings relating to whether Child had been harmed by Mother's decision to deny Grandparents visitation. These points are well taken. The only Utah case to consider the substantial relationship factor did so with respect to grandparents who had lived with the child and taken care of her "on a daily basis throughout most of the child's first four years of life." *Uzelac*, 2006 UT 46, ¶ 42. The relationship between Grandparents and Child clearly does not reach that level.[8]

---

[8]This is not to say that a grandparent must necessarily have assumed the role of a parent in order to establish a substantial relationship under the Grandparent Visitation Statute. But because I do not think it was essential for

(continued...)

Furthermore, although the trial court concluded that "the denial [of visitation] has likely caused harm to [Child]," it made no findings in support of that conclusion, and there appears to be little support for it in the record.

¶52     I would not analyze these factors in depth, however, because in light of the parameters outlined above, I am not convinced that Grandparents must demonstrate such an involved relationship or harm resulting from severance of the relationship in order for the trial court to consider an award of visitation where the combination of other compelling factors is sufficient to rebut the parental presumption. Specifically, in this case, the trial court found that Father had died, that Mother unreasonably restricted Grandparents' visitation, that Grandparents are fit to care for Child, and that visitation is in Child's best interests. These findings are supported by clear and convincing evidence and are sufficient to rebut the parental presumption.

¶53     Although the fact of Father's death alone would not justify a court award of grandparent visitation where the living parent continued to permit reasonable visitation between the child and the grandparents, I consider this factor very relevant in circumstances, such as those presented in this case, where the parent has "denied or unreasonably limited" visitation. *See* Utah Code Ann. § 30-5-2(2)(b).

> The [Grandparent Visitation S]tatute recognizes that
> when a family unit has been touched by . . . events

---

[8](...continued)
Grandparents to establish this factor in order to rebut the parental presumption, *see infra* ¶ 52, I will not delve into the question of what constitutes a substantial relationship. It is clear, however, that the relationship between Child and Grandparents was not as substantial as the relationship between the grandparents and grandchild in *Uzelac.*

[dividing it,] a situation may arise where the child's interests differ from those of the parent. This is particularly true where the direct family line between grandparents and grandchildren has been severed, leaving the "in-law" relationship as the only remaining adult connection. Recognizing the potential for conflict in the relationship between the parent and the "in-law" and the resulting potential for interference with the grandparent–grandchild relationship, the statute provides an avenue for grandparents and grandchildren to maintain their relationship.

*Uzelac v. Thurgood* (*In re Estate of S.T.T.*), 2006 UT 46, ¶ 30, 144 P.3d 1083 (citation omitted).

¶54    The concerns identified by the supreme court proved justified in this case when, following a number of disputes between Mother and Grandparents, Mother informed Grandparents that she intended to limit them to only one phone call with Child per month and one supervised visit "for a few hours" every other month. Although Mother maintains that these restrictions were reasonable under the circumstances, the trial court found—and the evidence supports, *see supra* ¶ 44—that they were primarily the result of Grandparents wanting what Mother perceived to be too much visitation,[9] and possibly related to "[f]inancial matters and [Child's

---

[9]The record does suggest that Grandparents demanded extensive visitation comparable to that afforded to non-custodial parents, *see generally* Utah Code Ann. § 30-3-35 (LexisNexis Supp. 2012), and that they threatened to sue for court-ordered visitation if Mother did not honor their demands. However, like the trial court, I fail to see "the nexus between a request for more contact and cutting off all but supervised visitation when that didn't exist before." The parental presumption relates to whether

(continued...)

maternal grandmother's] involvement." Furthermore, both the evaluator and the trial court considered Mother's other claimed concerns to have arisen only after the breakdown of the parties' relationship, and observed that she seemed to have previously been untroubled by Grandparents' ability to care for Child. In short, the evidence clearly and convincingly shows that Mother's decision to restrict Grandparents' visitation was based primarily on factors other than Child's best interests and was therefore unreasonable.

¶55    The evidence also supports the trial court's determinations that Grandparents were fit and that visitation was in Child's best interests. The trial court found that Grandparents had cared for Child on many occasions prior to the time their visitation was restricted and that Mother permitted them to spend time with Child because she knew they loved Child. The evaluator stated that Mother had relied on Grandparents for child care in the past and opined that Grandparents "appeared to love [Child] very much and would not harm her." She also testified that Grandparents "are fit and proper to have grandparent time." Witnesses at trial also testified as to Grandparents' fitness and stability. As to best interests, the evaluator opined,

> The more time this child spends with her grandparents and her paternal relatives, the better off she will be in terms of knowing and understanding that many people love her. She will be more self confident and well rounded having full access to

---

[9](...continued)
a parent's decisions regarding grandparent visitation are in the best interests of the child. Although Mother may have understandably felt pressured by Grandparents, I fail to see how their request for more time or even their threats to seek a court order leads to the conclusion that supervision and reduced contact was in *Child's* best interests.

> both sides of [her] family as well as her stepfather's
> family.

Thus, the threshold fitness and best interests factors were also established by clear and convincing evidence. Accordingly, the trial court did not err by determining that the parental presumption was rebutted or by awarding visitation to Grandparents.[10]

### IV. Other Constitutional Issues

¶56 Finally, Mother asserts that the trial court's award of approximately thirty-six hours of grandparent visitation per month violated her constitutional rights because it was not narrowly tailored. The Grandparent Visitation Statute instructs that the court may order "reasonable rights of visitation if the court finds that the petitioner has rebutted the [parental] presumption." Utah Code Ann. § 30-5-2(2) (LexisNexis 2007). Although trial courts might benefit from legislative guidance on what constitutes "reasonable rights of visitation" for a grandparent, I fail to see how an award of reasonable visitation is not narrowly tailored to the state's interest in preserving the grandparent–grandchild relationship under circumstances such as those presented in this case. *See generally Uzelac*, 2006 UT 46, ¶ 30. And Mother has failed to explain why the trial court's award of visitation was unreasonable, other than to assert that "a far more limited order—or none at all—would have sufficed." Because I would consider an award of reasonable visitation to be narrowly tailored to advance the state's interest, and because Mother has not adequately contested the

---

[10]I do acknowledge that this is a very close case. Nevertheless, as the trial court's factual findings are entitled to deference and those findings are sufficient to rebut the parental presumption, I would not think it appropriate for us to substitute our judgment for that of the trial court by disturbing its visitation award.

reasonableness of the trial court's visitation award, I would reject Mother's argument.

¶57    Finally, Mother challenges the standing provisions of the Grandparent Visitation Statute. She asserts that a statute "authorizing all grandparents to sue at any time" is not narrowly tailored and permits "[f]it parents . . . [to] be hauled into court to defend suits for temporary custody absent pleading and a preliminary showing of compelling circumstances that would tend to override the presumption that the parent's visitation decision is entirely appropriate." Even accepting Mother's assertions as true, I do not read the Grandparent Visitation Statute so broadly. The statute provides, "Grandparents have standing to bring an action in district court by petition, requesting visitation in accordance with the provisions and requirements of this section." Utah Code Ann. § 30-5-2(1). Because the Grandparent Visitation Statute goes on to outline the limited circumstances under which grandparent visitation may be considered, *see id.* § 30-5-2(2), permitting a grandparent to bring an action "in accordance with the provisions and requirements of this section" does require the grandparent to plead circumstances that might override the parental presumption, *see id.* § 30-5-2(1). Thus, contrary to Mother's assertion, the Grandparent Visitation Statute does not broadly grant standing to all grandparents and is sufficiently narrowly tailored to protect parents from unwarranted infringement on their constitutional rights.

## V. Conclusion

¶58    Ultimately, I disagree with the majority regarding the constitutionality of the Grandparent Visitation Statute as applied in this case in light of our supreme court's holding in *Uzelac*. Accordingly, I would examine the merits of Mother's other arguments. Having done so, I would conclude that the trial court's factual findings were not clearly erroneous. I would also determine that Grandparents rebutted the parental presumption by clear and

convincing evidence and that the trial court did not err by awarding grandparent visitation under the facts and circumstances of this case. Finally, I would conclude that the trial court did not violate Mother's constitutional rights by awarding Grandparents reasonable visitation and that the Grandparent Visitation Statute's standing provision is not overly broad. Accordingly, I would affirm the trial court's visitation award.

———————